55 Cal.App.4th 669 (1997)
HENRIETTA MACIAS, Plaintiff and Appellant,
v.
GEORGE HARTWELL, Defendant and Respondent.
Docket No. B103066.
Court of Appeals of California, Second District, Division Six.
June 5, 1997.
*671 COUNSEL
Reich, Adell, Crost & Cvitan, Julius Mel Reich and Paul E. Harris III for Plaintiff and Appellant.
Olins, Foerster & Hayes, Dennis J. Hayes and Barbara J. Ginsberg for Defendant and Respondent.
OPINION
YEGAN, J.
Henrietta Macias appeals from a judgment striking her libel complaint and dismissing the action pursuant to Code of Civil Procedure section 425.16.[1] The trial court found that the defamation action was a "SLAPP" suit (strategic lawsuit against public participation), that the alleged statements were privileged and not made with malice, and that there was no likelihood that she would prevail on her action. She was ordered to pay $44,445 attorney's fees. (§ 425.16, subd. (c).) We affirm.

Facts
The action arises out of a political flyer distributed to 10,000 union members prior to the election of union officers for the United Food and Commercial Workers, Local 1036 (Local 1036). In 1993, Local 1036 terminated appellant, the secretary-treasurer, for misuse of union funds. She filed a grievance and settled the matter before arbitration. Pursuant to a written settlement agreement, appellant resigned as union business agent and resigned from her elected position as secretary-treasurer of Local 1036. Local 1036 paid her $25,000 in exchange for a release of all claims against the union and its president, respondent George Hartwell.
In 1995, appellant ran against respondent for the position of Local 1036 president. She mailed a campaign flyer stating that the reason for her termination was "[d]isloyalty to the President," i.e., disloyalty to respondent.
Respondent believed the flyer was misleading and that union members should know the true reasons for appellant's termination. Respondent and his running mate, Marvin Armas, sent out a campaign flyer bearing the letterhead: "The Proven Team." The flyer stated that appellant was terminated for "misappropriation of Union funds, insubordination and excessive absence, plus disloyalty." A second, anonymous flyer was circulated stating that appellant was fired for "theft." Respondent did not produce, publish, or distribute the flyer.
*672 Appellant lost the election and filed suit against respondent, alleging that his statements were false and "defamatory per se, exposing Macias to hatred, contempt, ridicule, and obloquy, because they accuse Macias of dishonesty and of committing the crime of theft."
Respondent moved to dismiss the complaint pursuant to section 425.16. The trial court granted the motion and found that the union terminated appellant for the reasons stated in the flyer, that the statements in the flyer were privileged (Civ. Code, § 47, subd. (c)), and the statements were made without malice. Respondent moved for and was granted $44,445 attorney's fees. (§ 425.16, subd. (c).)

First Amendment Activity
(1) A SLAPP suit has been described as "a meritless suit filed primarily to chill the defendant's exercise of First Amendment rights. [Citation.]" (Wilcox v. Superior Court (1994) 27 Cal. App.4th 809, 815, fn. 2 [33 Cal. Rptr.2d 446].) Finding a "disturbing increase" in such lawsuits, the Legislature has declared "that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process." (§ 425.16, subd. (a).)
The anti-SLAPP statute, section 425.16, provides in pertinent part: "(b) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." One of the purposes of the statute is to eliminate meritless litigation at an early stage in the proceedings. (Bradbury v. Superior Court (1996) 49 Cal. App.4th 1108, 1113 [57 Cal. Rptr.2d 207].)
(2) Appellant argues that the anti-SLAPP statute does not apply to campaign statements made in a union election. We disagree. Section 425.16 applies to suits involving statements made during a political campaign (Beilenson v. Superior Court (1996) 44 Cal. App.4th 944, 950 [52 Cal. Rptr.2d 357] [campaign mailer]), statements made in connection with a recall election (Robertson v. Rodriguez (1995) 36 Cal. App.4th 347, 352 [42 Cal. Rptr.2d 464] [campaign mailer]), statements made in a political flyer concerning a candidate (Matson v. Dvorak (1995) 40 Cal. App.4th 539, 548 [46 Cal. Rptr.2d 880]), and statements made in a recall petition (Evans v. Unkow (1995) 38 Cal. App.4th 1490, 1493-1494 [45 Cal. Rptr.2d 624]).
*673 Under the anti-SLAPP statute, Hartwell had the burden of showing that the defamation action arose from an act in furtherance of his right of free speech and made "in connection with a public issue." (§ 425.16, subd. (b).) The trial court correctly found that respondent met his burden.
Under the federal Labor-Management Reporting and Disclosure Act of 1959 (LMRDA) every member of a labor organization has the right to express his or her view concerning candidates in an election of the labor organization. 29 United States Code section 411(a)(2) states in pertinent part: "Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings."
In Warren v. Herndon (1981) 115 Cal. App.3d 141, 147 [171 Cal. Rptr. 220], the Court of Appeal held that the LMRDA protected the speech activities of a union member who claimed that a union officer stole $300 from the union treasury and altered the minutes of board meetings. Applying the New York Times Co. v. Sullivan (1964) 376 U.S. 254, 279-280 [84 S.Ct. 710, 725-726, 11 L.Ed.2d 686, 706, 95 A.L.R.2d 1412] standard of constitutional malice, the court held that the statements were not actionable unless the defendant "made them either knowing that they were false or in reckless disregard of their possible falsity. [Fn. omitted.]" (Warren v. Herndon, supra, 115 Cal. App.3d at p. 147.)
Where, as here, a candidate speaks out on issues relevant to the office or the qualifications of an opponent, the speech activity is protected by the First Amendment. (Beilenson v. Superior Court, supra, 44 Cal. App.4th 944, 949-950. "The right to speak on political matters is the quintessential subject of our constitutional protections of the right of free speech. `Public discussion about the qualifications of those who hold or wish to hold positions of public trust presents the strongest possible case for applications of the safeguards afforded by the First Amendment.' [Citations.] ... Accordingly, the campaign mailer at issue was plainly published in furtherance of the author's `"right ... of free speech under the United States or California Constitution in connection with a public issue,"' and thus brings an action arising from its publication within the purview of section 425.16. [Citation.]" (Matson v. Dvorak, supra, 40 Cal. App.4th at p. 548.)
Appellant's contention that the publication did not involve a public issue is without merit. The public issue was a union election affecting 10,000 *674 members and her qualifications to serve as president. "Although matters of public interest include legislative and governmental activities, they may also include activities that involve private persons and entities, especially when a large, powerful organization may impact the lives of many individuals." (Church of Scientology v. Wollersheim (1996) 42 Cal. App.4th 628, 650 [49 Cal. Rptr.2d 620]; see also Matson v. Dvorak, supra, 40 Cal. App.4th 539, 548 [qualifications of a candidate for office a public issue].)
Appellant further asserts that the publication was not made in a public forum. Speech by mail, i.e., the mailing of a campaign flyer, is a recognized public forum under the SLAPP statute. (Beilenson v. Superior Court, supra, 44 Cal. App.4th 944, 947 [campaign mailer]; Matson v. Dvorak, supra, 40 Cal. App.4th 539, 543 [same].) Private conversations concerning the campaign flyer would also be protected under the anti-SLAPP statute. (E.g., Bradbury v. Superior Court, supra, 49 Cal. App.4th 1108, 1117 [district attorney's report]; Averill v. Superior Court (1996) 42 Cal. App.4th 1170, 1174 [50 Cal. Rptr.2d 62] [statements made to employer]; Dove Audio, Inc. v. Rosenfeld, Meyer & Susman (1996) 47 Cal. App.4th 777, 783-784 [54 Cal. Rptr.2d 830] [letter from law firm that it intended to file complaint with state Attorney General].)
Appellant argues that there was no evidence that "The Proven Team" flyer was mailed. We disagree. The flyer, which was authenticated and attached to the moving papers, stated "not printed or mailed at union expense" and was sent to 10,000 Local 1036 members in 6 counties. The trial court drew the inference that the flyer was mailed and found that it was "a written action, in a public forum, in connection with a public issue in a political campaign." Citing, Matson v. Dvorak, supra, 40 Cal. App.4th 539, the trial court found that "[s]peech by mail has been held to constitute a public forum."
Substantial evidence supports the finding that respondent's distribution of the flyer was in furtherance of his right to free speech under the United States or California Constitution and involved speech concerning a public issue. (§ 425.16, subd. (b).) Appellant, however, argues that her defamation claim falls outside the scope of the anti-SLAPP statute because the First Amendment only protects citizens from governmental action. The argument lacks merit. A libel action based on state law to recover damages is governmental action affecting speech. (Nowak et al., Constitutional Law (2d ed. 1983) § X, pp. 944-945; McNair v. Worldwide Church of God (1987) 197 Cal. App.3d 363, 373-374 [242 Cal. Rptr. 823].) "What a State may not constitutionally bring about by means of a criminal statute [criminal libel] is likewise beyond the reach of its civil law of libel." (New York Times Co. v. Sullivan, supra, 376 U.S. at p. 277 [84 S.Ct. at p. 724, 11 L.Ed.2d at p. 705].) *675 Moreover, article I, section 2 of the California Constitution provides independent protection for free speech and in certain contexts exceeds the protection provided by the First Amendment to the United States Constitution. (E.g., Robins v. Pruneyard Shopping Center (1979) 23 Cal.3d 899, 908-911 [153 Cal. Rptr. 854, 592 P.2d 341].) We therefore conclude that anti-SLAPP law applies to defamation actions arising out of statements made in a union election.

Likelihood of Prevailing on the Merits
(3) Respondent made a prima facie showing that the campaign statements were in furtherance of his free speech rights, were made in a public forum, and involved an issue of public interest. (§ 425.16, subd. (b).) The moving papers established that statements were privileged and made without malice. (Civ. Code, § 47, subd. (c); Krause v. Bertrand (1958) 159 Cal. App.2d 318, 321 [323 P.2d 784].) "The Proven Team" flyer was circulated in response to appellant's flyer which stated that her termination was for "[d]isloyalty to the President." Respondent declared that "it was important to accurately remind the voting membership of the additional reasons for Macias' termination, as Macias had initiated the subject, but failed to state other substantive reasons for her termination. The issue of appellant's termination and the reasons therefore spoke directly to the issue of Macias' qualifications for the office of President of Local 1036."
Appellant had to show, by competent and admissible evidence, that she would probably prevail on the defamation action. (§ 425.16, subd. (b); Church of Scientology v. Wollersheim, supra, 42 Cal. App.4th 628, 652-655.) No evidence, however, was presented that the publication was untruthful or made with malice. The trial court properly found that there was no likelihood that appellant would prevail on the complaint.

Attorney's Fees
(4) Section 425.16, subdivision (c), provides that respondent is entitled to fees and costs as the prevailing party on the motion to dismiss. (Dove Audio, Inc. v. Rosenfeld, Meyer & Susman, supra, 47 Cal. App.4th 777, 785; Bradbury v. Superior Court, supra, 49 Cal. App.4th 1108, 1119.) Appellant claims that the award for $44,445 fees is improper because Local 1036 paid his litigation costs.
Appellant cites no authority, and we have found none, that a defendant who successfully brings an anti-SLAPP motion is barred from recovering fees if the fees were paid by a third party. Based on her construction of the *676 law, respondent would not be entitled to attorney's fees if the defense costs were paid by his homeowner's insurance carrier, the union's insurance carrier, or a relative. No court has so held.
Equally without merit is the argument that respondent failed to provide proper documentation setting forth what fees were incurred on the motion to strike. The trial court reviewed the itemized billings and limited the award for fees to the anti-SLAPP motion. (Dove Audio, Inc. v. Rosenfeld, Meyer & Susman, supra, 47 Cal. App.4th 777, 785; Lafayette Morehouse, Inc. v. Chronicle Publishing Co. (1995) 39 Cal. App.4th 1379, 1383-1384 [46 Cal. Rptr.2d 542].) The award did not include fees for the federal district court proceeding or fees incurred prior to the motion to strike. Substantial evidence supports the reasonableness of the fee award. (Church of Scientology v. Wollersheim, supra, 42 Cal. App.4th 628, 658-659.)
The judgment is affirmed. Respondent is awarded costs and attorney's fees on appeal in an amount to be determined by the trial court.
Gilbert, Acting P.J., and Coffee, J., concurred.
A petition for a rehearing was denied July 1, 1997, and appellant's petition for review by the Supreme Court was denied August 13, 1997.
NOTES
[1] All statutory references are to the Code of Civil Procedure.