Filed: 04/30/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE SONOMA LAND TRUST,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>PETER THOMPSON, et al.,<br><br>     Defendants and Appellants. | A159139<br><br><br><br><br>(Sonoma County Super. Ct. No. SCV-258010) |

Peter Thompson, Toni Thompson, and their corporation Henstooth Ranch, LLC, appeal the trial court's award of attorney fees to the Sonoma Land Trust (the Trust) after the Trust successfully enforced the terms of a conservation easement. We find no error and affirm the fee award.

## BACKGROUND

### A.

A conservation easement is a voluntary agreement between a landowner and a land trust or government agency that permanently limits land uses to protect a property's "natural, scenic, historical, agricultural, forested, or open-space condition." (Civ. Code, §§ 815.1, 815.3.) The Legislature has declared these features to be "among the most important environmental assets of California" and encourages landowners to convey conservation easements to qualified nonprofits. (Civ. Code, § 815.) Property owners that do so may obtain state and

1

federal tax benefits.  (See Pub. Resources Code, § 37000 et seq.; 26 U.S.C. §§ 170(h), 2031(c).)

When a person violates a conservation easement, a court may award injunctive relief and monetary damages, including the cost of restoration and compensation for the loss of scenic, aesthetic and environmental value.  (Civ. Code, § 815.7, subds. (b), (c).)  The prevailing party is entitled to reasonable attorney fees.  (*Id*., § 815.7, subd. (d).)

## B.

The Thompsons owned land near Glen Ellen, California, that is the subject of a conservation easement granted by previous owners in favor of the Trust.  They intentionally violated the easement by uprooting and dragging mature oak trees from the easement property to their newly constructed home on an adjoining property, killing the trees in the process.  They also bulldozed a new road, graded parts of the property, dumped dredge spoils taken from a pond on another property, and caused other damage.  Peter Thompson tried to prevent the Trust from inspecting the property (the easement allows inspections), tried to hide the damage, and repeatedly lied about what they had done.

## C.

The Trust filed suit in November 2015, seeking damages and injunctive relief under the terms of the easement and Civil Code section 815.7.  As the trial court later described, the Thompsons "answered [the] Trust's complaint by denying all [the] Trust's allegations that [they] violated the Easement and denying any obligation to restore the Easement Property," and they maintained their "take-no-prisoners

2

approach through trial." The contentious litigation spanned four and one-half years, culminating in a 19-day bench trial.

The court held the Thompsons jointly and severally liable for the harm to the property. It also held liable a nonparty to the easement—the Thompsons' corporation, Henstooth Ranch, LLC—which owned the adjacent property to which the oaks were moved. It awarded the Trust $575,899, including $318,870 for the cost of restoring the property, as well as injunctive relief. In a separate appeal, this court affirmed the trial court's judgment on the merits. (See *Sonoma Land Trust v. Peter Thompson, et al.* (Dec. 16, 2020, A157721) [nonpub. opn.])

The trial court granted the Trust attorney fees and costs of $2,961,264.29 under Civil Code section 815.7, subdivision (d), Code of Civil Procedure section 1021.5, and the conservation easement.

## DISCUSSION

### A.

To calculate a fee award, a trial court must first determine the lodestar—the number of hours reasonably expended, multiplied by the reasonable hourly rate. (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095 (*PLCM*).) The court may then adjust the lodestar, based on various factors, to fix the fee at the fair market value for the legal services provided. (*Ibid.*)

Here, the court calculated a lodestar of $2,032,695.10 and added a fee enhancement of $813,078.04. The court relied on multiple factors to justify the fee enhancement, including the contingent risk that counsel assumed, counsel's "exceptional, outstanding skill," the novelty and difficulty of the case, and the excellent results obtained. With respect to contingent risk, the court noted that, although the Trust's

3

insurer paid the first $500,000 of attorney fees, the attorneys accepted a reduced billing rate, and they worked on a fully contingent basis after the insurance coverage reached its cap.

We review the trial court's interpretation of the law de novo. (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 751.) We review the decision to award attorney fees, and the amount of fees awarded, for abuse of discretion, mindful of the fact that the trial judge is in the best position to assess the value of an attorney's performance. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132 (*Ketchum*).) Unless an appellant demonstrates otherwise, we assume the trial court followed the law and acted within its discretion. (*Espejo v. The Copley Press, Inc.* (2017) 13 Cal.App.5th 329, 378 (*Espejo*).)

## B.

We reject the Thompsons' argument that, because the Trust's insurance policy covered its fees up to $500,000, the trial court was required to deduct that amount from the lodestar.

The trial court was not required to reduce the Thompsons' liability for attorney fees simply because the Trust had the foresight to purchase insurance. (See *Staples v. Hoefke* (1987) 189 Cal.App.3d 1397, 1410 [awarding fees despite insurance coverage].) Attorney fee awards are generally based on the fair market value of the services provided, not the actual cost to the party. (*PLCM*, *supra*, 22 Cal.4th at pp. 1094-1098 [awarding fees to party represented by in-house counsel].) "California courts have routinely awarded fees to compensate for legal work performed on behalf of a party . . . [who] did not have a personal obligation to pay for such services out of his or her

4

own assets." (*Lolley v. Campbell* (2002) 28 Cal.4th 367, 373.) Accordingly, a court may award attorney fees regardless of whether an insurer, or other third party, paid the fees. (*Nemecek & Cole v. Horn* (2012) 208 Cal.App.4th 641, 652 [insurer paid fees]; *Macias v. Hartwell* (1997) 55 Cal.App.4th 669, 675-676 [labor union paid fees]; Pearl, California Attorney Fee Awards (Cont.Ed.Bar 3d ed. 2021) § 2.24.)

The Thompsons submit the Trust has been improperly granted a double recovery. They invoke a principle of contract law: a party to a contract cannot profit more from the breach of an obligation than from its performance. (See *Bramalea California, Inc. v. Reliable Interiors, Inc.* (2004) 119 Cal.App.4th 468, 472-473 [affirming dismissal of breach of contract claim for defense costs and fees that were paid by third party].)

The point is inapposite. The Trust did not base its attorney fee claim on a breach of contract. Because the contract at issue (the easement) authorizes attorney fees, the Trust is entitled to its fees as the prevailing party whether or not it actually paid them. (Code Civ. Proc., §§ 1032, subd. (b), 1033.5, subds. (a)(10)(A), (c)(1); *Persson v. Smart Inventions, Inc.* (2005) 125 Cal.App.4th 1141, 1173-1174.) And apart from the contract, the Trust also was granted its attorney fees under Civil Code section 815.7, subdivision (d) and Code of Civil Procedure section 1021.5. In any case, the Trust will not receive a double recovery because, under the insurance policy, it must reimburse the insurer from any damage award.

5

Nothing required the trial court to deduct the $500,000 from the lodestar.[1]

## C.

The Thompsons challenge the lodestar on two other grounds: the number of hours were excessive and the lodestar was disproportionate to the public benefit.  We disagree.

## 1.

According to the Thompsons, the trial court should have reduced the number of hours because the Trust's attorneys were inefficient.  The Thompsons cite instances in which the court admonished the Trust's counsel to proceed more quickly or to refrain from making repetitive arguments or asking witnesses repetitive questions.  The Thompsons also contend that the Trust's attorneys over-litigated an easy case.

First, the Thompsons' arguments are too vague to establish an abuse of discretion.  It is not enough to cherry-pick examples of attorney missteps or to dismiss a case as easy, in hindsight, after nearly five years of contentious litigation and a 19-day trial.  The Thompsons fail to point to any charges that were improper.  They do not explain what the lodestar should be or how it should be calculated.  The Trust reduced its request by more than 10 percent overall to account for duplication and inefficiency; the Thompsons do not explain

---

[1] Insurance coverage may be relevant to a different issue—the degree to which an attorney and client mitigated the risk of non-payment—which the court may consider, along with other factors, if it chooses to adjust the lodestar up or down. (See *Ketchum, supra,* 24 Cal.4th at pp. 1138-1139.)  We discuss this in connection with the fee enhancement, below.

why this reduction is insufficient.  "General arguments that fees claimed are excessive, duplicative, or unrelated do not suffice."  (*Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2008) 163 Cal.App.4th 550, 564; *Chavez v. Netflix, Inc.* (2008) 162 Cal.App.4th 43, 61 (*Chavez*) [party challenging lodestar must offer a "reasoned argument explaining where the court went wrong"].)

Second, the Thompsons simply ignore the parts of the record that support the trial court's conclusions.  They focus exclusively on the trial, overlooking years of difficult, contentious pre-trial litigation in which most of the fees were incurred.  The trial court observed that the number of hours expended by the Trust was reasonable in light of the Thompsons' aggressive tactics throughout the case, a conclusion the record readily supports.  Richard Pearl, a fees expert, opined that the Trust's fee request was reasonable; the Thompsons do not even mention this evidence in their opening brief.  The court explained that it "read every single time entry," reviewed all stages of the litigation, and found that the time expended by the Trust's counsel was "reasonable," "appropriate," and "necessary."  The Thompsons have not shown an abuse of discretion.  (See *PLCM, supra*, 22 Cal.4th at p. 1095.)

**2.**

The Thompsons assert that the fee award was improper because the action did not confer " 'a significant benefit on the general public or a large class of persons,' " as required by Code of Civil Procedure section 1021.5.  We need not address the issue.  The trial court also based the fee award on Civil Code section 815.7 and the terms of the conservation easement.  Neither requires a significant public benefit.

7

(Civ. Code, § 815.7, subd. (d).)  They provide independent bases for the award.

**D.**

The Thompsons argue that the trial court abused its discretion by adding a fee enhancement of $813,078.04, reflecting a multiplier of 1.4 times the lodestar.  We disagree.

**1.**

The court may apply a multiplier based on contingent risk, exceptional skill, or numerous other factors.  (See *Ketchum, supra*, 24 Cal.4th at pp. 1132-1134, 1138-1139.)  There is no magic formula; any one factor may justify an enhancement.  (*Krumme v. Mercury Ins. Co.* (2004) 123 Cal.App.4th 924, 947 .)

Here, a key factor was contingent risk.  In contingent fee cases, a fee enhancement compensates the lawyer for having taken the case despite the risk of receiving no payment in the event of a loss or the risk of a delayed payment in the event of a victory.  (*Ketchum, supra*, 24 Cal.4th at pp. 1132-1133, 1137-1138.)  The enhancement "is intended to approximate market-level compensation for" cases taken on contingency, "which typically includes a premium for the risk of nonpayment or delay in payment of attorney fees."  (*Id.* at p. 1138.)

The Thompsons contend that the trial court abused its discretion by relying on contingent risk because the litigation was only partially contingent.  As discussed above, the Trust's insurance policy covered the first $500,000 in legal fees regardless of the outcome of the litigation.  According to the Thompsons, this meant that the Trust "bore no risk" for the first two years of the litigation, before their billings hit the $500,000 cap.

8

The fact that a case is partially contingent does not eliminate contingent risk as a factor. It only mitigates the risk. The trial court may apply a multiplier after "consider[ing] whether, and to what extent, the attorney and client have been able to mitigate the risk of nonpayment, e.g., because the client has agreed to pay some portion of the lodestar amount regardless of outcome." (*Ketchum*, *supra*, 24 Cal.4th at p. 1138.)

Here, the trial court did just that: it took into account that the Trust's counsel received some fees early in the case and then later proceeded on a "fully contingent basis . . . due to the important public interests at stake." The Trust's attorneys also agreed to a reduced fee, well below the market rate. The noncontingent portion of the fee award represented less than a quarter of the lodestar and only 18 percent of the fair market value of the total fees. The Trust's attorneys bore the risk that, if they lost, they would not be paid the fair market value of most of their work and, if they won, payment could be delayed for several years, as was the case here. Further, although the Trust requested a multiplier of 1.6, the court awarded a reduced multiplier of 1.4. We find no abuse of discretion. (See, e.g., *Building a Better Redondo, Inc. v. City of Redondo Beach* (2012) 203 Cal.App.4th 852, 871, 874 (*Building a Better Redondo*) [affirming "modest" 1.25 multiplier where "the major portion, about 75 percent of the claimed fees, was contingent in nature"].)

In their reply brief, the Thompsons contend that the trial court should have applied the multiplier only to the portion of the fees that exceeded the insurance coverage. The Thompsons rely on case law holding that a multiplier should not apply to fees that were in no way

9

contingent, such as when a party has won on the merits and established a right to a fee award, and the fees at issue were incurred simply to determine the amount of the award. (See, e.g., *Ketchum*, *supra*, 24 Cal.4th at pp. 1141-1142.) That is not the situation here. The fees were partially contingent, and the fees were incurred while the parties were still litigating the merits of the case. (See *id.* at p. 1138; cf. *Building a Better Redondo*, *supra*, 203 Cal.App.4th at p. 874 [affirming fee award where trial court applied multiplier to the entire lodestar in partially contingent case].)

## 2.

The Thompsons also argue that the trial court improperly used the same factors (particularly the attorneys' skill and the novelty and difficulty of the case) to justify both the lodestar and the fee enhancement. In our view, the contingent risk factor alone was sufficient to justify the fee enhancement. (See *Building a Better Redondo*, *supra*, 203 Cal.App.4th at p. 874.) Nevertheless, we briefly address the Thompsons' argument concerning double counting.

The Thompsons are wrong to suggest that factors like the attorneys' skill cannot contribute to both a lodestar and an enhancement. They are correct, of course, that double counting is improper. (*Ketchum*, *supra*, 24 Cal.4th at pp. 1138-1139.) A skilled attorney commands a higher fee, and a difficult case requires more hours, both of which are ordinarily built into the lodestar. (*Ibid.*) An enhancement is proper, however, when these factors, though partially reflected in the lodestar, are not *fully* reflected in the lodestar, such as when the attorney displays an extraordinary level of skill that justifies a higher fee or when the particular difficulties of the case require not

10

just more time but more talent, expertise, and quality.  (*Ibid*; see *Chavez, supra*, 162 Cal.App.4th at p. 61 [the lodestar may not capture aspects of the quality of representation that can support an enhancement].)  The factors may overlap in a general sense, but an enhancement focuses on something *extra*.

The Thompsons have not demonstrated that the trial court double counted.  (See *Espejo, supra*, 13 Cal.App.5th at p. 378 [trial court is presumed to have applied the law correctly unless appellant affirmatively shows otherwise].)  The court accurately explained the lodestar formula—the reasonable hourly rate multiplied by the reasonable hours expended.  It was careful to state, repeatedly, that it understood the rule against double counting.  The court noted the Trust attorneys' "complete and comprehensive victory" against a "well-funded, vigorous, hardline defense;" it highlighted novel and complex questions of law (e.g., the enforcement of easements against a third party, Henstooth Ranch LLC, and the interplay of the easement with a senior utility easement), and it concluded the attorneys "required special knowledge" and displayed "exceptional, outstanding" skill and expertise, resulting in a comprehensive remedy that will restore a unique property.  In the context of the court's stated intention to avoid double counting, we understand the court to be describing exceptionally high levels of skill and expertise that, despite serious challenges, achieved an outstanding result and that were not fully factored into the lodestar.  Moreover, there is ample evidence that the court could reasonably have set a higher hourly rate in the lodestar.  The lower rate it chose left more room for an enhancement to fairly compensate the attorneys.

11

Finally, the Thompsons complain that the trial court did not explain more precisely its reasoning for the multiplier. But the court was not required to issue a statement of its reasons (*Ketchum*, *supra*, 24 Cal.4th at p. 1140), and this is not a situation where the award is inscrutable or appears to have been plucked from the air. (See *Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 100-101.) Further details might have been helpful, but they were not required.

We have considered the Thompsons' remaining arguments and find them to be without merit.

## DISPOSITION

We affirm the order granting the Trust's motion for attorney fees.

_____
BURNS, J.

We concur:


_____
SIMONS, ACTING P.J.



_____
NEEDHAM, J.


A159139

Sonoma County Superior Court, Case No. SCV-258010

Trial Judge:  The Honorable Patrick Broderick

Shute, Mihaly & Weinberger LLP, Andrew W. Schwartz, Sarah H. Sigman and Aaron M. Stanton, for Plaintiff and Respondent.

Barnes & Thornburg LLP, L. Rachel Lerman, and Law Offices of Richard Freeman, Richard W. Freeman, for Defendants and Appellants.