Filed 10/25/22  Big Sky Ranch v. Morris CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| BIG SKY RANCH COMPANY LLC,<br><br>    Plaintiff, Cross-Defendant and Respondent,<br><br>v.<br><br>JEFF MORRIS, et al.,<br><br>    Defendants, Cross-Complainants, Appellants, and Cross-Respondents,<br><br>FARHAD NOVIAN,<br><br>    Cross-Defendant, Respondent and Cross-Appellant. | 2d Civ. No. B310413<br>(Cons. w/B312446)<br>(Super. Ct. No. 56-2020-00541119-CU-FR-VTA)<br>(Ventura County) |

Appellant and cross-respondent Jeff Morris is a location scout who worked for nearly a decade at a well-known filming ranch owned by respondent Big Sky Ranch Company LLC (Big

Sky).[1]  Big Sky terminated its relationship with Morris in November 2019 and later sued him for spreading purportedly false information about the ranch's business operations.  Morris cross-complained against Big Sky and its attorney, cross-appellant Farhad Novian, for breach of contract, emotional distress, and other causes of action arising from his termination.

Morris moved to strike Big Sky's complaint as a strategic lawsuit against public participation ("SLAPP") meant to punish him for disclosing zoning and permitting issues at the ranch. (Code Civ. Proc., § 425.16.)[2]  The trial court denied the motion and awarded Big Sky attorney's fees.  Novian followed with his own anti-SLAPP motion contending Morris sued him for privileged actions taken as Big Sky's attorney.  The trial court denied his motion as well but did not award fees to Morris.

Morris and Novian appeal.  We affirm the trial court's orders denying Morris's motion and awarding attorney's fees to Novian.  We reverse the order denying Novian's motion as to Morris's cross-claim for intentional interference with potential economic advantage but affirm as to the remaining claims.

FACTUAL BACKGROUND

Big Sky Ranch Movie Ranch (ranch) owns several thousand acres of rural land near the city of Simi Valley.  Its rolling hills and oak groves have served as a backdrop for hundreds of

---

[1] Morris identified cross-defendants I & J Partnership, LP, ICO Investment Group, Inc., Isaac Moradi, and Alexander Moradi as the owners of Big Sky and its assets, including the ranch property.  They are not parties to this appeal.

[2] We cite the Code of Civil Procedure unless otherwise noted.

Hollywood productions since the 1960s, most notably western-themed television shows such as *Rawhide*, *Gunsmoke*, and *Little House on the Prairie*.

Morris is a veteran location scout who was engaged to promote the ranch in 2010 by Isaac Moradi, a co-owner of Big Sky. There was no written contract. Morris describes their arrangement as a partnership or joint venture that later developed into an employer-employee relationship. Big Sky describes it as a long-term consulting agreement. The parties agree Morris eventually moved onsite with his family and managed the ranch's day-to-day business activities for Moradi. This included creating a website and social media accounts, obtaining permits, and collecting fees from those filming at the ranch.

Big Sky sent a letter to Morris in September of 2019 announcing Moradi had resigned and delegated his operational duties to the company's board of directors. The board, in turn, had "appointed Farhad Novian, of Novian & Novian LLP to assist with this transition." The letter explained Novian would contact Morris in the coming days "with some questions regarding Ranch operations." Novian and Morris began a phone and email dialogue. Novian requested Morris provide, among other things, permits and filming contracts for the past three years. They scheduled an in-person meeting at the ranch for November 26, 2019.

The parties give different accounts of what happened at the November 26 meeting. Morris said Novian arrived with a menacing bodyguard who watched silently as Novian threatened to have Morris arrested for embezzlement unless he moved within 24 hours. In contrast, Novian describes the meeting as a civil discussion in which he terminated Morris's services and

discussed the logistics of separation. He denies threatening Morris with criminal prosecution or physical harm.

Novian followed up the same day with a letter to Morris entitled "Notice of Termination and Demand to Cease and Desist." It demanded Morris provide a move out date and immediately return all property related to the ranch. This included records and login information for all email accounts, social media accounts, and web domains. The letter demanded Morris cease and desist using ranch trademarks and other intellectual property. It concluded by stating the firm would "take legal action to protect the Ranch's interests" if Morris did not agree within 24 hours to the proposed terms of separation.

Morris retained counsel. He agreed to move out but insisted he owned the website, social media accounts, and other intellectual properties he created during his tenure. Big Sky later accused him of spreading lies about the ranch closing during the pandemic and losing its license to operate. Big Sky eventually sued Morris for, among other things, conversion, trade libel, and cybersquatting. Morris cross-complained for breach of contract, restitution, copyright infringement, and employment law violations. He named Novian as a cross-defendant. Morris alleged Novian's threats at the meeting caused him emotional distress.

Morris moved to dismiss Big Sky's complaint pursuant to the anti-SLAPP statute. He accused Big Sky of suing to punish him for voicing legitimate concerns about zoning issues and mismanagement at the ranch. The court denied the motion and awarded Novian attorney's fees and costs under section 425.16, subdivision (c)(1). ($18,220.00 attorney fees and $192 costs.) Novian followed with his own anti-SLAPP motion. He argued Morris's claims arose from Novian's conduct as an attorney and

4

impinged on his first amendment rights. The trial court denied Novian's motion as well. Both appealed. We granted Morris's unopposed motion to consolidate the appeals for purposes of briefing, oral argument, and decision.

## DISCUSSION

### Anti-SLAPP Principles and
### Standard of Review

"A SLAPP suit has been described as 'a meritless suit filed primarily to chill the defendant's exercise of First Amendment rights.'" (*Macias v. Hartwell* (1997) 55 Cal.App.4th 669, 672.) Such suits are subject to a special motion to strike, i.e., an anti-SLAPP motion. (§ 425.16, subd. (b)(1).) The moving party must show the challenged claim arises from an act "in furtherance of [their] right of petition or free speech . . . in connection with a public issue." (*Ibid.*) If the moving party meets this threshold, the complaining party must then establish a probability of prevailing on the claim. (*Ibid.*; *Simpson Strong-Tie Co., Inc. v. Gore* (2010) 49 Cal.4th 12, 21.)

We review anti-SLAPP rulings de novo, applying our independent judgment to both prongs of the inquiry. (*South Sutter, LLC v. LJ Sutter Partners, L.P.* (2011) 193 Cal.App.4th 634, 657.) Morris and Novian bear the burden of demonstrating the trial court erred when it denied their respective motions. (*State Farm Fire & Casualty Co. v. Pietak* (2001) 90 Cal.App.4th 600, 610.)

### Morris's Anti-SLAPP Motion

Morris accused Big Sky of suing him because he "publicly discussed the future of the Big Sky Ranch as it relate[d] to zoning, the pandemic, [and mis]management." This included conversations with the Ventura County Film Commission and other industry professionals expressing his concern that the

5

ranch did not benefit from Los Angeles County's "30-Mile Studio Zone" designation. The property's fame, he argued, placed such matters in the public's interest and firmly within the anti-SLAPP statute's protections.

Section 425.16, subdivision (e) describes four categories of conduct that constitute an act "in furtherance of a person's right of petition or free speech . . . in connection with a public issue."[3] The trial court denied the motion after finding Morris failed to show his statements fit into any of these categories. We agree.

The first and second categories in two subdivision (e) cover statements made before, or in connection with, "a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law." Morris's motion described the Ventura County Film Commission as a legislative entity. He cited no evidence or authority in support of this statement. Nothing in the record indicates the Commission is a public agency or, alternatively, a private entity performing a quasi-governmental function. (See, e.g., *Kibler v. Northern Inyo County Local Hospital Dist.* (2006) 39 Cal.4th 192, 199-201 [private hospital's

_____

[3] Section 425.16, subdivision (e)'s four categories are: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

6

peer review process an official proceeding under anti-SLAPP law; Legislature accorded physician peer review decisions "a status comparable to that of quasi-judicial public agencies"].)

The third and fourth categories in subdivision (e) cover statements made about, or conduct in furtherance of, issues of public interest. "The definition of 'public interest' within the meaning of the anti-SLAPP statute has been broadly construed to include not only governmental matters, but also private conduct that impacts a broad segment of society and/or that affects a community in a manner similar to that of a government entity." (*Damon v. Ocean Hills Journalism Club* (2000) 85 Cal.App.4th 468, 479.) Again, the record provides little support for Morris's contention. His statements about zoning designations and mismanagement, when distilled, concerned his view that Big Sky did not optimize the ranch as a business asset. Morris cites the ranch's prominence in popular culture as satisfying this criterion but did not specify how these issues impacted "a broad segment of society" or affected "a community in a manner similar to that of a government entity." The court correctly denied his motion.

Lastly, Morris contends the trial court erred when it awarded attorney's fees to Big Sky without articulating whether the anti-SLAPP motion was "frivolous" under section 425.16, subdivision (c)(1). We do not agree. The trial court found Morris failed to submit *any* admissible supporting evidence and that his "'broad and amorphous'" allegations about the public's interest in his claims were "insufficient for purposes of the anti-SLAPP statute of as a matter of law."

*Novian's Anti-SLAPP Motion*

Four of the ten causes of action in Morris's cross-complaint named Novian as a cross-defendant. These included Morris's claims for: (1) intentional infliction of emotional distress (IIED);

7

(2) intentional interference with prospective economic advantage (IIPEA); (3) wrongful termination; and (4) unfair business practices under Business and Professions Code section 17200 (UCL). Novian's anti-SLAPP motion argued all four claims arose from his statements and conduct as Big Sky's attorney and, as such, fell within section 425.16, subdivision (e)'s first two categories of protected activity, i.e., statements "(1) . . . made before a . . . judicial proceeding" and "(2) . . . made in connection with an issue under consideration or review by a . . . judicial body . . . ." (See *Thayer v. Kabateck Brown Kellner LLP* (2012) 207 Cal.App.4th 141, 154 [anti-SLAPP statute "protects lawyers sued for litigation-related speech and activity"].)

The trial court denied the motion after sustaining Morris's objections to most of Novian's supporting evidence. We first address this key evidentiary ruling. Concluding the trial court erred, we then revisit whether Morris's four causes of action are subject to strike under the anti-SLAPP statute.

*1. Excluding of Novian's Evidence*

Attorneys with Novian's own firm represented him during the anti-SLAPP proceedings. Associate Alexander Gura filed a declaration with fifteen exhibits supporting the motion. Fourteen of the fifteen were written communications to or from Novian at the firm's address. [4] The trial court's tentative ruling sustained Morris's evidentiary objections to the declaration and all exhibits, finding Gura lacked personal knowledge of the underlying events and failed to establish the elements of the business records exception. (Evid. Code, § 1271.) Novian attended the anti-

---

[4] This includes Exhibits B through O. The one remaining exhibit, Big Sky's September 19 letter (Exhibit A), was offered as evidence by Morris in his opposition.

SLAPP hearing and offered to authenticate the exhibits by testifying or filing a supplemental declaration. The trial court refused because Morris counsel had submitted on the tentative ruling and chosen not to attend the hearing. It then adopted the tentative ruling, holding Novian "[had] not sustained his burden as the moving party in light of the [c]ourt's ruling on the evidentiary objections."

The trial court should have admitted the Novian firm's written communications with Morris. Gura's declaration properly authenticated these exhibits under Evidence Code section 1271.[5] He attested he was an associate at the firm and that each document was "maintained in the ordinary course of business and vocation . . . at or about the time each document was generated, under the [firm's] control and supervision." In addition, trial courts should refrain from excluding evidence on procedural grounds when, as here, the offering party could have easily cured the deficiency. (See *Fashion 21 v. Coalition for Humane Immigrant Rights of Los Angeles* (2004) 117 Cal.App.4th 1138, 1148 ["Unlike evidence made inadmissible by the hearsay rule, the parol evidence rule or a privilege could never be introduced at trial and therefore could never support a judgment

---

[5] Evidence Code section 1271 codifies the business records exception to the hearsay rule. It states: "Evidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered to prove the act, condition, or event if: (a) The writing was made in the regular course of a business; (b) The writing was made at or near the time of the act, condition, or event; (c) The custodian or other qualified witness testifies to its identity and the mode of its preparation; and (d) The sources of information and method and time of preparation were such as to indicate its trustworthiness."

for the plaintiff. But evidence that is made inadmissible only because the plaintiff failed to satisfy a precondition to its admissibility could support a judgment for the plaintiff assuming the precondition could be satisfied"].)

Having concluded the trial court should have admitted the bulk of Novian's exhibits, we now must determine whether it should have ruled differently on his motion to strike the four causes of action brought against him.

*2. Morris's Third Cause of Action for IIED*

Morris's IIED claim is based on Novian's alleged threats at the November 26 meeting. Novian does not show his activities before and during this meeting arose from protected activity. Big Sky's September 19 letter to Morris introduces Novian only as a person the board had hired to assist with "operational" functions following Moradi's resignation. Emails introduced by Morris in his opposition show they politely discussed ranch operations by email and phone in the weeks before the meeting. Neither Novian nor Big Sky had accused Morris of misconduct by this point. Novian's version of the meeting is silent about whether he even mentioned litigation; he states only that he met with Morris "in his capacity as counsel for Big Sky." We affirm the trial court's denial of Novian's anti-SLAPP motion as to this claim.

*3. Morris's Fifth Cause of Action for IIPEA*

In contrast, Morris's IIPEA claim is based on Novian's post-meeting activities. The letter Novian sent Morris immediately after the meeting described his firm as "legal counsel to [Big Sky]." It demanded Morris respond the next day to a detailed list of demands and concluded with a thinly-veiled threat of litigation: "In the event we cannot come to an agreement with regard to all of the foregoing matters by close of business November 27, 2019, I have been authorized to take legal action to

protect the Ranch's interests in this manner." This cleared any ambiguity that may have existed over Novian's role with Big Sky and loudly announced his client's intent to litigate the issues described in the letter. These issues included the conduct that motivated Big Sky to sue less than four months later, such as Morris's refusing to surrender intellectual property and his "making disparaging statements about, or otherwise interfering with any business relationships related to, the Ranch . . . ."

Morris responded by telling Novian to communicate with Morris's attorney going forward. Morris's attorney then went on the offense by accusing Big Sky of breaching its contract with Morris and violating an unspecified fiduciary duty. The rhetoric only escalated when Big Sky (through Novian) demanded Morris cease and desist his "wrongful . . . actions" and reiterated Big Sky intended to "pursue all available legal remedies against [him] at once" if he did not. These communications showed Novian was acting in his capacity as an attorney representing a client in litigation.[6]   (See *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056 [anti-SLAPP statute protects "qualifying acts committed by attorneys in representing clients in litigation"].)

Having concluded Novian showed Morris's IIPEA claim arose from protected activities, we must now decide whether Morris showed a probability of prevailing. He did not. Novian's post-meeting activities were privileged communications under California's statutory litigation privilege. (Civ. Code, § 47 ["A privileged publication or broadcast is one made:  . . . (b) [i]n any … judicial proceeding"]; see *Action Apartment Assn., Inc. v. City*

_____

[6] This includes Novian's August 31, 2020 cease and desist letter to Web.com Group, Inc. demanding it stop hosting Morris's websites because of his violations of Big Sky's trademark rights.

*of Santa Monica* (2007) 41 Cal.4th 1232, 1251 [prelitigation communication privileged "when it relates to litigation that is contemplated in good faith and under serious consideration"].) The evidence Morris offered in opposition to the motion only confirmed the adversarial nature of the parties' relationship at this point. As such, Morris could not have overcome this defense had the court advanced to the second prong of the anti-SLAPP analysis. The trial court should have granted Novian's motion as to this cause of action.

### 4. Morris's Seventh Cause of Action for Wrongful Termination in Violation of Public Policy

Morris's wrongful termination claim is based on allegations that Big Sky (through Novian) fired him because they feared he might publicize "health code violations, safety issues, zoning problems, and permit problems" at the ranch. The firing occurred at the November 26 ranch meeting. As discussed above, Novian did not make the threshold showing that his statements before and during the meeting were protected activities or fell within a privilege. The trial court properly denied the motion as to this cause of action.

### 5. Morris's Tenth Cause of Action for Unfair Business Practices

The UCL "does not proscribe specific activities, but in relevant part broadly prohibits 'any unlawful, unfair or fraudulent business act or practice.' [Citation.]" (*Aleksick v. 7-Eleven, Inc.* (2012) 205 Cal.App.4th 1176, 1184.) ""By proscribing 'any unlawful' business practice, 'section 17200 "borrows" violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable."' [Citation.]" (*Id.* at p. 1185.) Morris bases his UCL claim on the same allegations underlying his IIED, IIPEA, and

12

wrongful termination claims against Novian.[7]  The IIED and IIPEA claims are not viable predicate violations here.[8]  The wrongful termination claim, however, arises from Novian's non-protected conduct and may serve as a predicate violation if Morris proves his firing violated the California Whistle Blowers Act.  (Labor Code, § 1102.5.)  As such, we affirm the denial of Novian's anti-SLAPP motion as to Morris's UCL claim.

DISPOSITION

The trial court's orders denying Morris's special motion to strike Big Sky's complaint and awarding attorney's fees to Big Sky are affirmed.  The trial court's order denying Novian's motion to strike Morris's cross-complaint is reversed as to the fifth cause of action; it is otherwise affirmed.  Each side to bear its own fees and costs.

---

[7] The cross-complaint identifies all nine previous causes of action as predicates to his UCL claim and incorporates all prior allegations.  The three causes of action mentioned here, however, are the only other claims Novian is named as a cross-defendant.

[8] Morris seeks emotional distress damages in connection with his IIED claim.  Tort damages are not available under the UCL.  (*Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 173, citing *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1266.)  As explained above, Morris's IIPEA claim is based on Novian's protected and privileged activities as Big Sky's attorney.  Morris cannot circumvent the litigation privilege by re-framing this conduct as a UCL violation.

13

NOT TO BE PUBLISHED.

YEGAN, J.

We concur:

GILBERT, P. J.

BALTODANO, J.

Benjamin F. Coats, Judge
Superior Court County of Ventura

_____

Law Office of Stephanie White, Shawn S. White, for Defendant, Cross-Complainant, Appellant, and Cross-Respondent Jeff Morris.

Novian & Novian, Farhad Novian, Anthony S. Chavez, and Alexander B. Gura, for Plaintiff and Respondent Big Sky Ranch Company LLC.

Novian & Novian, Alexander B. Gura, for Cross-Defendant, Respondent, and Cross-Appellant, Farhad Novian.