[No. C020162. Third Dist. Nov. 21, 1995.]

PAUL MATSON, Plaintiff and Appellant, v.
EUGENE J. DVORAK, Defendant and Respondent.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I and III.

**COUNSEL**

Siegel, Yee & Jonas and Dan Siegel for Plaintiff and Appellant.

Norman & Eames and James K. Norman for Defendant and Respondent.

## OPINION

**SCOTLAND, J.**—Plaintiff Paul Matson appeals from a judgment of dismissal following a successful motion to strike pursuant to Code of Civil Procedure section 425.16, commonly known as the "anti-SLAPP statute" (*Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 817-818 [33 Cal.Rptr.2d 446]).[1] He contends the trial court erred in applying this statute to strike his causes of action against defendant Eugene J. Dvorak for libel and invasion of privacy based upon the contents of a campaign flyer published by a political organization to which Dvorak contributed money. The flyer accused Matson, a candidate for election to the city council, of having "hundreds of dollars of unpaid fines and citations" issued by the police department. Matson also challenges the court's award of attorney fees to Dvorak in accordance with Code of Civil Procedure section 425.16, subdivision (c). (Further section references are to the Code of Civil Procedure unless otherwise specified.)

As we shall explain in the published portion of this opinion, the trial court correctly applied section 425.16 to this lawsuit because it arises from an act in furtherance of the right of free speech. The cause of action for libel was properly stricken because Matson made no showing that Dvorak had a responsible role in the publication. One whose only contribution to a political campaign is financial, and who otherwise is not involved in the preparation, review or publication of campaign literature, cannot be subject to liability in a defamation action for statements contained in the publication even if it is established that the statements are false and were published with malice. The cause of action for invasion of privacy was properly stricken because, regardless of whether a record of unpaid fines is a private or public fact, the claim that a candidate for public office has refused or neglected to pay fines is a legitimate issue of public concern.

In the unpublished parts of our opinion, we discard Dvorak's assertion that Matson failed adequately to perfect his right to appeal from the trial court's orders, and reject Matson's challenge to the attorney fee award. Accordingly, we shall affirm the judgment.

---

[1] SLAPP is the acronym for "Strategic Lawsuits Against Public Participation." (Comment, *SLAPP Suits: Weaknesses in First Amendment Law and in the Courts' Responses to Frivolous Litigation* (1992) 39 UCLA L.Rev. 979, 981; see *Dixon v. Superior Court* (1994) 30 Cal.App.4th 733, 741 [36 Cal.Rptr.2d 687].) Generally, SLAPP lawsuits are actions undertaken primarily to deter people from exercising their political or legal rights or to punish them for doing so. (*Ibid.*)

## FACTS AND PROCEDURAL BACKGROUND

In 1992, Paul Matson and David Tobiassen were members of the Nevada City Council and rival candidates for the Nevada County Board of Supervisors in the general election held on November 3, 1992. To some extent, Matson was characterized in the contest as a "pro-environment, anti-development" candidate, while Tobiassen was characterized as "pro-development."

Five days before the election, an unspecified number of Nevada County voters received in the mail a campaign flyer urging them to "JUST SAY NO TO PAUL MATSON!" The flyer states it is "paid for by Concerned Citizens for Responsible Leadership," and contains this text: "Paul Matson doesn't want to obey the law . . . [¶] . . . He just wants to be your Supervisor!" "Some politicians think they're better than the rest of us! [¶] According to city records, Nevada City Councilman **Paul Matson** has hundreds of dollars of unpaid fines and citations stacking up in city hall. Not just current violations, but dating back into the mid 1980's!" The accompanying illustration shows a stack of eight purported citations marked "POLICE DEPARTMENT [¶] NOTICE OF VIOLATION [¶] **DELINQUENT**" on each of which is Matson's name. One such document, dated June 1987, bears the notation "$315 Bail [¶] MAIL TO: NEVADA CITY POLICE"; no date or bail amount is visible on the other documents depicted.

Matson lost the November 1992 election. A year later, he sued David Tobiassen, Concerned Citizens for Responsible Leadership, and various individuals and entities Matson later alleged to be members and contributors of Concerned Citizens for Responsible Leadership: Eugene J. Dvorak, Dean Deniz, Amaral Family Trust, Jack A. Erickson, The Erickson Group, Ltd., and Wildwood West Real Estate. The complaint seeks damages for libel, invasion of privacy, and violation of the California Political Reform Act. It alleges the campaign flyer (1) "falsely stat[es] that plaintiff was a scofflaw and a person who habitually flaunted his violations of the law"; (2) was prepared with information that defendants unlawfully obtained from "confidential records concerning plaintiff in the possession of the Nevada City Police Department"; and (3) unlawfully concealed that Concerned Citizens for Responsible Leadership was a "sponsored committee" organized to support the rival candidacy of defendant Tobiassen.

Defendants other than Dvorak moved to strike the libel and invasion of privacy claims (the first and second causes of action, respectively) on the ground there is no probability Matson will prevail on these claims.

(§ 425.16.)[2] Among other things, they asserted that Matson's cause of action for libel fails to contain essential factual allegations which would support an inference that the campaign flyer was published with actual malice (*New York Times Co.* v. *Sullivan* (1964) 376 U.S. 254, 279-280 [11 L.Ed.2d 686, 706-707, 84 S.Ct. 710]), and the invasion of privacy cause of action is untenable because the citations referred to in the flier are not "private facts" and are matters of legitimate public concern in that Matson was a political candidate (*Diaz* v. *Oakland Tribune, Inc.* (1983) 139 Cal.App.3d 118, 126 [188 Cal.Rptr. 762]).

Following these successful motions, Dvorak moved to strike the complaint pursuant to section 425.16. In addition to incorporating the memoranda of points and authorities filed by other defendants and also arguing that the libel cause of action is unlikely to prevail because the statements attributed to him are substantially true or merely are an assertion of opinion, Dvorak averred that he (1) does not know Matson or Tobiassen, (2) did not prepare or read the allegedly libelous campaign flyer, and (3) is not a member of defendant Concerned Citizens for Responsible Leadership, knows no one who is, and has "no knowledge of who sponsored the Concerned Citizens for Responsible Leadership, or who it was formed to support."

Matson opposed Dvorak's motion with evidence that Tobiassen's campaign "was supported by many people involved in Nevada County real estate development projects, including . . . Dvorak," and that Tobiassen used false pretenses to obtain from the police department a list of overdue parking citations, which he knew to be inaccurate and which included 20 overdue parking citations issued to Matson. According to Matson, Tobiassen then "provided the information he obtained regarding Matson to Dean Deniz and the other individual defendants. It is unknown whether he apprised them of his knowledge concerning the unreliable nature of this information." Matson also submitted copies of campaign disclosure forms filed by Concerned Citizens for Responsible Leadership, which show that Dvorak contributed

---

[2]Subdivision (a) of section 425.16 states: "The Legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process."

Subdivision (b) thereof governs motions to strike, and provides in part: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim. In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based . . . ."

$999 to the organization and that virtually all sums collected by Concerned Citizens for Responsible Leadership were spent on the allegedly libelous mailing.

In July 1994, the court granted Dvorak's motion to strike the libel and invasion of privacy claims based on section 425.16, finding "plaintiff did not meet his burden of proof to establish a probability that he will prevail on his claim as to these causes of action." The order says nothing about whether Matson was permitted to amend these two causes of action.[3]

Dvorak then sought attorney fees and costs pursuant section 425.16, subdivision (c), which states in pertinent part that a defendant who prevails on a motion to strike under section 425.16, subdivision (b) "shall be entitled to recover his or her attorney's fees and costs." The court subsequently awarded Dvorak costs and $2,200 in attorney fees.

While Dvorak's motion for attorney fees was pending, Matson amended his complaint. The amended complaint restates the libel and invasion of privacy causes of action, again names Dvorak as a defendant in those theories of recovery, and adds an allegation that Dvorak was not "merely [a] contributor[] to Concerned Citizens for Responsible Leadership" but was a "knowing participant[] in the formation and improper actions of Concerned Citizens for Responsible Leadership."

Dvorak (together with defendants Amaral Family Trust, Jack A. Erickson, The Erickson Group, Ltd., and Wildwood West Real Estate) renewed the motion to strike the libel and invasion privacy causes of action from the amended complaint (as contrary to section 425.16 and made without leave of court), moved for judgment on the pleadings as to all causes of action, and requested sanctions.[4]

Matson responded by filing a "stipulation"—to which he and defendant Amaral Family Trust alone are parties—stating Matson "agrees that in light of the Court's previous rulings, the first two causes of action of the First Amended Complaint for Damages (Libel) do not apply to and are not

---

[3]At the same hearing, the court found that Matson's claim for damages arising from violations of the Political Reform Act is properly challenged by a motion for judgment on the pleadings; deemed defendants' motions to strike this claim to be motions for judgment on the pleadings; granted them on the ground that Matson had failed to state a cause of action against defendants because the statute applies only to elected officials, candidates and treasurers of election committees; and gave Matson 10 days to amend that cause of action.

[4]In Dvorak's motion for judgment on the pleadings as to the third cause of action, he argued Matson cannot amend the complaint so as to warrant application of the California Political Reform Act to him.

brought against defendants Amaral Family Trust, Eugene J. Dvorak, Jack A. Erickson, The Erickson Group, Limited, and Wildwood West Real Estate . . . ."

In his opposition to the second motion to strike and for judgment on the pleadings, Matson volunteered to "dismiss those defendants who truly are 'mere contributors' to Concerned Citizens [for Responsible Leadership]," complaining that he had been hampered in his efforts to depose each of the defendants so as to ascertain which were "mere contributors." Matson nonetheless refused to abandon his opposition to Dvorak's motion; Matson stated he "is not at this time willing to credit [Dvorak's] deposition testimony in which he claimed that he had no involvement in Nevada County politics; that he barely knew [defendant] Dean Deniz; that he did not contribute $999 to Concerned Citizens; and that he does not know why Deniz listed him as a contributor in that amount."

On November 14, 1994, the court granted defendants' motions. In a document entitled "Judgment and Order," the court found that "[p]laintiff again renamed defendants in the first two causes of action for libel and invasion of privacy, causes of action that were clearly stricken by the Court as to the moving defendants"; ordered that "the motions to strike/demurrers and motion for judgment on the pleading as to the third cause of action against all moving defendants are granted and/or sustained without leave to amend"; and denied defendants' requests for sanctions.

Dvorak then brought a motion to recover his attorney fees and costs in connection with making the second motion to strike the libel and invasion of privacy causes of action, seeking an award of $3,317.63. (§ 425.16, subd. (c).) Matson opposed the motion on the ground that, prior to the hearing on Dvorak's second series of motions, "there was some confusion among the parties as to whether the plaintiff had attempted to reassert his first and second causes of action against the moving defendants in this first amended complaint"; to resolve the issue, he had filed a stipulation that the first and second causes of action in the amended complaint do not apply to Dvorak, among others; consequently, the November 1994 order striking the libel and invasion of privacy claims "was not granted under section 425.16" and no attorney fees under that section may be awarded.

In December 1994, the court entered an "Order and Judgment: Re Costs and Attorney Fees (Second)," in which it awarded Dvorak $800 in attorney fees in connection with bringing his second motion to strike, in light of the "duplicate nature of the second motion, . . . [and] the fact that a stipulation had been entered which eliminated the contributors as parties to the first and second causes of action . . . ." This appeal followed.

## DISCUSSION

### I*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

### II

 Turning to Matson's contentions on appeal, we first examine whether the trial court erred in permitting a special motion to strike under section 425.16.

Matson contends this lawsuit "is not a SLAPP" because to so characterize it is inconsistent with the "history of section 425.16" and is "not what the Legislature had in mind." In support of this argument, Matson relies upon the following dicta from *Dixon* v. *Superior Court, supra,* 30 Cal.App.4th 733: "The *typical* SLAPP suit involves citizens opposed to a particular real estate development. The group opposed to the project, usually a local neighborhood, protests by distributing flyers, writing letters to local newspapers, and speaking at planning commission or city council meetings. The developer responds by filing a SLAPP suit against the citizen group alleging defamation or various business torts. . . . SLAPP plaintiffs do not intend to win their suits; rather, they are filed solely for delay and distraction . . . , and to punish activists by imposing litigation costs on them for exercising their constitutional right to speak and petition the government for redress of grievances." (*Id.,* at p. 741, citations and fn. omitted.)

While the foregoing discussion provides useful background regarding SLAPP suits, we are governed by familiar rules of statutory interpretation in evaluating whether section 425.16 can be applied to this action. Our primary duty is to ascertain the intent of the Legislature by looking to the words of the statute and giving them their ordinary meaning. (*People* v. *Broussard* (1993) 5 Cal.4th 1067, 1071 [22 Cal.Rptr. 278, 856 P.2d 1134].) When statutory language is clear and unambiguous, there is no need for interpretation, and we must apply the statute as written. (*People* v. *Overstreet* (1986) 42 Cal.3d 891, 895 [231 Cal.Rptr. 213, 726 P.2d 1288].)

Section 425.16, subdivision (b) states in part: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

---

*See footnote, *ante,* page 539.

In ruling that Matson had not established a probability of success on his claims, the trial court impliedly found Dvorak had satisfied the threshold requirement of showing the claims arose from an act in furtherance of his right of free speech. The record supports the trial court's determination on this threshold issue. The right to speak on political matters is the quintessential subject of our constitutional protections of the right of free speech. "Public discussion about the qualifications of those who hold or who wish to hold positions of public trust presents the strongest possible case for applications of the safeguards afforded by the First Amendment." (*Aisenson* v. *American Broadcasting Co.* (1990) 220 Cal.App.3d 146, 154 [269 Cal.Rptr. 379].) It is axiomatic that the qualifications of a declared candidate for public office is a public issue. (See, e.g., *Kapellas* v. *Kofman* (1969) 1 Cal.3d 20, 36 [81 Cal.Rptr. 360, 459 P.2d 912] [". . . government officials and candidates for such office have almost always been considered the paradigm case of 'public figures' who should be subjected to the most thorough scrutiny"]; *McCoy* v. *Hearst Corp.* (1986) 42 Cal.3d 835, 859 [231 Cal.Rptr. 518, 727 P.2d 711] ["[t]he public possesses an 'independent interest' in the qualifications and performance of its public officials"].) Accordingly, the campaign mailer at issue was plainly published in furtherance of the author's " 'right . . . of free speech under the United States or California Constitution in connection with a public issue,' " and thus brings an action arising from its publication within the purview of section 425.16. (*Wilcox* v. *Superior Court, supra*, 27 Cal.App.4th at pp. 819-820.)

Once the party moving to strike a complaint pursuant to subdivision (b) of section 425.16 has made a prima facie showing that the lawsuit arises from an act by the defendant in furtherance of his right of petition or free speech under the United States or California Constitution in connection with a public issue, the plaintiff must establish a "probability" that he will prevail on the merits of the complaint. (§ 425.16, subd. (b).) To establish such a probability, a plaintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited. (*Wilcox* v. *Superior Court, supra*, 27 Cal.App.4th at pp. 823-825.) Whether he has done so is a question of law, which we determine de novo. (*Ibid.*; *Hung* v. *Wang* (1992) 8 Cal.App.4th 908, 931 [11 Cal.Rptr.2d 113]; *Aquino* v. *Superior Court* (1993) 21 Cal.App.4th 847, 850 [26 Cal.Rptr.2d 477].)

Matson asserts that he has established "a legally sufficient, prima facie claim of libel" in which "Dvorak's involvement is established." In addressing this contention, we turn first to the question whether Matson made a sufficient showing that Dvorak was involved in the publication at issue.

The general rule for defamation is that only one "who takes a *responsible* part in the publication is liable for the defamation." (*Osmond* v. *EWAP, Inc.* (1984) 153 Cal.App.3d 842, 852 [200 Cal.Rptr. 674], italics in original; *Jones* v. *Calder* (1982) 138 Cal.App.3d 128, 134 [187 Cal.Rptr. 825].) For example, the business manager of a foreign newspaper was not liable where there was no evidence that he had control over the editorial staff and it was undisputed that he had no knowledge of the preparation or content of the subject articles until after publication (*Sakuma* v. *Zellerbach Paper Co.* (1938) 25 Cal.App.2d 309, 321-322 [77 P.2d 313]); and the distributor of allegedly libelous materials cannot be held liable unless it is shown that he either knew of its libelous content or knew of facts which imposed a duty to investigate. (*Osmond* v. *EWAP, Inc.*, *supra*, at p. 855.)

Matson contends "Dvorak's involvement [in publication of the flyer] is established" because "the financial disclosure form filed by Concerned Citizens for Responsible Leadership reflects that Dvorak contributed $999 or 28 percent of the $3,546 raised by the group." We disagree that Dvorak's mere contribution of money to Concerned Citizens for Responsible Leadership is sufficient to establish that he played a "responsible part" (*Osmond* v. *EWAP, Inc.*, *supra*, 153 Cal.App.3d at p. 852) in the alleged libel. Matson does not allege that Dvorak participated in preparing the mailing, knew of its contents in advance of publication, knew that the charges made in the campaign mailer were false, or held any position in the organization from which his oversight of campaign literature can be inferred. To the contrary, in opposition to the motion to strike, Matson says only of Dvorak that he "supported" Tobiassen's candidacy, made a cash contribution, and was "provided" by Tobiassen with inaccurate information concerning the status of Matson's parking citations. Matson admits "it is unknown" whether Tobiassen apprised Dvorak of the unreliability of that information upon which the campaign mailer was based. Because the evidence submitted by Matson, if taken as true, does not indicate that Dvorak had a responsible part in the publication of the alleged libel, the court did not err in ruling that Matson has failed to demonstrate a probability of prevailing on his libel claim against Dvorak. One whose only contribution to a political campaign is financial, and who is not involved in the preparation, review or publication of campaign literature, cannot be subjected to liability in a defamation action for statements contained in that literature, just as one whose only involvement in the publication of a libelous magazine article is ownership of shares in the publishing company cannot be held personally liable for the defamatory article.

In light of this conclusion, we need not address Dvorak's contention that Matson fails to show a probability he can satisfy the constitutional requirement of establishing the campaign flier was published with malice. (*Philadelphia Newspapers, Inc.* v. *Hepps* (1986) 475 U.S. 767, 776 [89 L.Ed.2d

783, 793, 106 S.Ct. 1558]; *New York Times Co.* v. *Sullivan, supra,* 376 U.S. at pp. 279-280 [11 L.Ed.2d at p. 706] [the constitutional guarantees of the First and Fourteenth Amendments "prohibit[] a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with the knowledge that it was false or with reckless disregard of whether it was false or not"].) It is well settled that courts will not decide constitutional questions when the issue can be decided on another ground. (*Palermo* v. *Stockton Theatres, Inc.* (1948) 32 Cal.2d 53, 66 [195 P.2d 1]; *Reed* v. *City and County of San Francisco* (1992) 10 Cal.App.4th 572, 575 [12 Cal.Rptr.2d 647].) Having resolved the issue on another ground, we also need not address Dvorak's argument that Matson fails to show a probability he can establish the alleged defamatory statements are false.

■ As to the invasion of privacy cause of action, the trial court correctly found Matson has not shown a probability that he will prevail against Dvorak based upon the public disclosure of information related to unpaid parking citations.

"As discerned from the decisions of our courts, the public disclosure tort contains the following elements: (1) public disclosure (2) of a private fact (3) which would be offensive and objectionable to the reasonable person and (4) which is not of legitimate public concern." (*Diaz* v. *Oakland Tribune, Inc., supra,* 139 Cal.App.3d at p. 126.) Not only does Matson offer no evidence that Dvorak acted to disclose the alleged fact of Matson's outstanding traffic citations, but whether a candidate for public office has refused or neglected to pay fines against him is a legitimate issue of public concern. "In choosing those who are to govern them, the public must, of course, be afforded the opportunity of learning about any facet of a candidate's life that may relate to his fitness for office." (*Kapellas* v. *Kofman, supra,* 1 Cal.3d at pp. 36-37 [sustaining demurrer on invasion of privacy claim by candidate's children following publication of information about their trouble with police]; see *Briscoe* v. *Reader's Digest Association, Inc.* (1971) 4 Cal.3d 529, 535 fn. 5 [93 Cal.Rptr. 866, 483 P.2d 34], ["[a]lmost any truthful commentary on public officials or public affairs, no matter how serious the invasion of privacy, will be privileged"]; *Stryker* v. *Republic Pictures Corp.* (1951) 108 Cal.App.2d 191, 194 [238 P.2d 670] [a "politician[,] running for public office, in effect[,] offers his public and private life for perusal so far as it affects his bid for office"].)

Because Matson is unable to establish that the subject of the campaign flyer is not of legitimate public concern, the trial court correctly found he is unlikely to prevail on his invasion of privacy claim.

This conclusion makes it unnecessary for us to address the contention that Matson fails to show a probability he will prevail on the invasion of privacy claim because, as Dvorak asserts, the Matson's unpaid citations are a matter of public record and, hence, not a "private fact."

III*

. . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is affirmed.

Sims, Acting P. J., and Nicholson, J., concurred.

---

*See footnote, *ante*, page 539.