Filed 6/28/22  Baussan v. Imara CA1/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| EDOUARD BAUSSAN,<br><br>        Plaintiff and Respondent,<br>v.<br><br>NIA IMARA et al.,<br><br>        Defendants and Appellants. | A162088<br><br>(City and County of San Francisco Super. Ct. No. CGC-20-585692) |

Plaintiff Edouard Baussan filed the underlying defamation complaint against defendants Nia Imara, Pierre Labossiere, Leslie Mullin, and Robert Roth in connection with an online article that defendants published.  The trial court denied defendants' special motion to strike the complaint under California's anti-SLAPP (Strategic Lawsuit Against Public Participation) law. (Code Civ. Proc., § 425.16.)[1]  In denying the motion, the trial court found that Baussan had shown a probability of prevailing on his defamation claim and that Baussan was not a public figure so as to trigger a heightened showing of malice.  We affirm.

___

[1]     All further statutory references are to the Code of Civil Procedure unless otherwise stated.

## FACTUAL AND PROCEDURAL BACKGROUND

At all relevant times, defendants were editorial board members of the Haiti Action Committee (HAC). HAC publishes an online, monthly newsletter called Haiti Solidarity that covers current events and issues in Haiti.

In April 2019, defendants published an article in the newsletter titled "The Lasalin Massacre" with the subheading "Is it an accidental event, a fight between rival gangs to control an area, or a calculated and planned political act?"[2] The article identified Baussan by name twice, once in the first paragraph and once in the last paragraph of the article. Baussan filed the subject action against defendants, alleging defamation (libel) and false light. According to the complaint, Baussan "currently serves as the Vice President of Unibank, S.A. and is widely respected in the business and local community in which he engages and resides."

The complaint alleged the article contained numerous defamatory statements about Baussan, including that (1) he is part of the Haitian oligarchy "determined at all costs to force out the residents of [Lasalin] and take over the land to enlarge its economic empire"; (2) the Haitian oligarchy organizes a "system of corruption and repression that assassinates and massacres people—the working class"; (3) the Haitian oligarchy "has its own clique within the Haitian National Police . . . that works with armed civilians such as Serge '*Ti Junior*' Alectis to eliminate adversaries"; (4) the Haitian oligarchy seek armed militia and ally with outlaws to eliminate political adversaries; and (5) the Lasalin massacre "was a political act, calculated and

---

[2] The complaint described the Lasalin massacre as a gang-related incident that took place in November 2018 in which dozens of residents in the Haitian town of Lasalin were tortured and killed.

planned" by the Haitian oligarchy. Baussan alleged that he suffered loss of reputation, shame, and injury as a result of these statements.

Defendants filed an anti-SLAPP motion, arguing that Baussan's claims arose from protected activity and that Baussan could not demonstrate a probability of prevailing on his libel claim. As relevant here, defendants contended the article contained only two statements about Baussan whose accuracy Baussan does not dispute: (1) he is the owner of Unibank and controls the terminals across from Lasalin after buying out the other shareholders; and (2) he along with six other named individuals represent the oligarchy. Defendants argued that because the article's other statements regarding the oligarchy's involvement in corruption, violence, and the Lasalin massacre did not specifically name Baussan, Baussan cannot prevail on his libel claim. Defendants further contended that Baussan should be considered a "limited purpose" public figure based on his participation in organizations that influence Haiti's socioeconomic development. Based on that status, defendants contended Baussan was required to show that the alleged defamatory statements were not only false but made with actual malice, that is, knowledge that they were false when made or made with reckless disregard as to their falsity.

In opposing the motion, Baussan argued that the article was defamatory by falsely portraying him as "a corrupt criminal mastermind who murders and massacres his own people, and directly and illegally deals with and funds crooked politicians, corrupt police, and outlaws for his own financial and political gain." Baussan also disputed his alleged status as a public figure because he has not taken any action to intentionally thrust himself into the public controversy giving rise to the defamation, including the events surrounding the Lasalin massacre. In support, Baussan

submitted a declaration stating he has never held a press conference or been contacted by the media to provide comments on current events or public controversies (including the contents of the article), has never sought out the media for publicity purposes, and has not voluntarily injected himself into any particular public controversy.

The trial court denied the anti-SLAPP motion. Although the court found that defendants had satisfied their burden under the first prong of the anti-SLAPP statute by showing the complained-of acts involved protected speech, it determined that Baussan met his burden under the statute's second prong by showing a probability of success on his claims. As part of the latter determination, the trial court found that Baussan was not a public figure based on defendants' lack of evidence. Defendants timely appealed.

DISCUSSION

## A. Anti-SLAPP Law and Standard of Review

The anti-SLAPP statute provides that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

The court engages in a two-step process in analyzing an anti-SLAPP motion. First, the moving defendant must show that the challenged claim arises from constitutionally protected free speech or petition rights. (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 381–382, 396 (*Baral*).) If the requisite showing is made, the burden then shifts to the plaintiff to demonstrate a probability of prevailing on the merits of the claim. (*Id*. at p. 396.) In this second step, the

4

plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." (*Matson v. Dvorak* (1995) 40 Cal.App.4th 539, 548.) A cause of action directed at protected speech is subject to striking under the anti-SLAPP statute only if it lacks such minimal merit. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.)

We review de novo a trial court's ruling denying an anti-SLAPP motion. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325.) Like the trial court, "we consider 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' [Citation.] However, we do not weigh credibility or compare the weight of the evidence. [Citation.] Rather, we accept as true evidence favorable to the plaintiff, determine whether the plaintiff has made a prima facie showing of facts necessary to establish its claim at trial, and evaluate the defendant's evidence only to determine whether it defeats that submitted by the plaintiff as a matter of law." (*Tichinin v. City of Morgan Hill* (2009) 177 Cal.App.4th 1049, 1061.)

## B. Showing Regarding Probability of Prevailing

Baussan does not challenge the trial court's ruling that defendants' alleged acts constituted protected activity under the first prong of the anti-SLAPP analysis. Therefore, we analyze only the second prong of the anti-SLAPP analysis, i.e., whether Baussan has demonstrated a probability of success on his libel claim.

The elements of defamation are: "(1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage." (*Wong v. Jing* (2010) 189 Cal.App.4th 1354, 1369.) Defamation can take the form of libel, which is a false and unprivileged written publication. (Civ. Code, § 45.) In determining whether a statement

5

constitutes libel, we examine "what is explicitly stated as well as what insinuation and implication can be reasonably drawn from the communication." (*Forsher v. Bugliosi* (1980) 26 Cal.3d 792, 803.) The California Supreme Court has "long recognized that false inferences or implications raised by the arrangement and phrasing of apparently non-libelous statements can be as injurious as explicit epithets" and has "upheld libel actions founded on such implications." (*Kapellas v. Kofman* (1969) 1 Cal.3d 20, 33.) To that end, courts use a totality of the circumstances test and consider "both the language of the statement and the context in which it is made" to determine what the natural and probable effect of the statement is on an average reader. (*Bently Reserve LP v. Papaliolios* (2013) 218 Cal.App.4th 418, 427.)[3]

Defendants argue the statements Baussan complains of were not about him, but about the acts and goals of various undefined groups including the "Haitian oligarchy," the "ruling elite," and the "bourgeois class." While acknowledging that the article identified Baussan as one of several men representing the oligarchy, defendants contend the article did not describe Baussan as a leader of the oligarchy and did not say he was otherwise responsible for the criminal acts attributed to the oligarchy. We are not persuaded. Applying the totality of the circumstances test, we find that Baussan has made a prima facie showing that, read in context, some of the statements are defamatory concerning him as alleged in the complaint.

The first reference to Baussan appears in the first paragraph of the

---

[3] Defendants contend Baussan's cause of action for false light is essentially equivalent to his libel cause of action and is subject to the same defenses and limitations to liability. As defendants treat the two causes of action the same for purposes of analyzing the second prong of the anti-SLAPP inquiry, we do not separately discuss the false light claim.

article and states, "Edouard Baussan, the owner of Unibank, now controls these terminals after buying out the other shareholders."  This statement, by itself, is not defamatory.  However, this same paragraph earlier identifies Lasalin as "situated directly across the terminals and ports," and the sentence immediately preceding the reference to Baussan states the oligarchy "is determined at all costs to force out the residents of the community and take over the land to enlarge its economic empire."  The sentence immediately following the reference to Baussan continues:  "For this group to achieve its dream, it must remove the people who live in the shantytown of Lasalin."  Read as a whole, it can be said that the natural and probable effect of the passage on the average reader is that Baussan's control of the terminals is tied to his goal of enlarging his economic empire through removal of the residents of Lasalin.

After this initial reference to Baussan, the body of the article discusses Haiti's disadvantaged class and the political influence of its bourgeois class. The article also describes how the Haitian oligarchy works with armed militias and outlaws, and engages in corruption and violence in order to maintain monopolistic control of the country.  And referring to "political crimes" such as "massacres committed against the Haitian people," the article describes several massacres that occurred in the Lasalin community dating back to 1957, including one in November 2018 in which "hundreds were killed, scores of houses were burned, young women raped, and children and elderly mutilated with machetes."

The second reference to Baussan appears in the very last paragraph of the article, which states, "What do Boulos, Edouard Baussan, Andy Apaid, Baker Charles, Dimitri Craan, Sherif Abdallah and Bigio represent?  The oligarchy."  Following that statement is a sentence stating that if Lasalin or

7

certain other cities "become a political obstacle, it follows naturally that the oligarchy will try to eliminate all of their political adversaries . . . ." Shortly after, the article concludes with the assertion that "[t]he Lasalin massacre was neither an accidental occurrence nor an intergang turf war. It was a political act, calculated and planned."

In the proceedings below, Baussan submitted a declaration stating he has never taken part in any of the corrupt, repressive, unethical, or criminal activities described in the article. This was sufficient to create a triable issue of fact as to the libelous nature of defendants' article. (See generally *Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 949 [at the second stage of the anti-SLAPP inquiry, "the court may consider affidavits, declarations, and their equivalents if it is reasonably possible the proffered evidence set out in those statements will be admissible at trial"]; *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 291 [in assessing whether a plaintiff has shown a probability of prevailing, the court must " 'accept as true the evidence favorable to the plaintiff' "].)

In sum, we conclude a reasonable inference or insinuation to be drawn from the references to Baussan—both within the specific paragraphs in which they appear and in context of the article as a whole—is that Baussan is part of a powerful and corrupt oligarchy who works with armed militias and outlaws to eliminate political adversaries and that he somehow played a part in orchestrating the Lasalin massacre. And given Baussan's declaration disputing the veracity of these inferences, we conclude Baussan has demonstrated that his claims are both legally sufficient and supported by a prima facie showing of facts to meet his burden under the second prong of the anti-SLAPP statute. (See *Matson v. Dvorak, supra*, 40 Cal.App.4th at p. 548.)

In disputing the defamatory character of their article's references to

Baussan, defendants liken this case to *New York Times Co. v. Sullivan* (1964) 376 U.S. 254. In that case, Sullivan was an elected city commissioner who was in charge of supervising the local police department and who brought a libel suit against the New York Times after it published an advertisement that included references to oppressive acts by the police in response to student demonstrations. (*Id.* at pp. 256–257.) In holding the statements at issue were not libelous, the high court highlighted that "[t]here was no reference to [Sullivan] in the advertisement, either by name or official position" and that even though "the statements may be taken as referring to the police, they did not on their face make even an oblique reference to [Sullivan] as an individual." (*Id.* at pp. 287–289.) The *New York Times* decision does not assist defendants' position. Because defendants' article referenced Baussan by name twice, surrounded by charges of wrongdoing, the facts here present no parallel to those in the *New York Times* decision.

## C. "Limited Purpose" Public Figure

Defendants argue that Baussan is a "limited purpose" public figure and is therefore required to show malice in order to prevail on his libel claims.[4] On this record, we are not convinced.

As a preliminary matter, defendants are correct that a plaintiff who is a "limited purpose" public figure must prove by clear and convincing evidence that the defendant made the alleged defamatory statement with knowledge of its falsity or with reckless disregard of the truth or falsity of the statement.

---

[4] Defendants do not argue on appeal that Baussan is an "all purpose" public figure, i.e., one who has gained general fame or notoriety in the community that he should be deemed a public personality for all aspects of his life. (*Reader's Digest Assn. v. Superior Court* (1984) 37 Cal.3d 244, 253 (*Reader's Digest*).) We agree the record as currently developed appears insufficient to establish that Baussan is an all purpose public figure, and as indicated, we do not read defendants' briefs as arguing otherwise.

9

(See *Reader's Digest Assn. v. Superior Court* (1984) 37 Cal.3d 244, 256 (*Reader's Digest*).) Where it applies, this heightened malice standard must be taken into account in analyzing an anti-SLAPP motion. (*Walker v. Kiousis* (2001) 93 Cal.App.4th 1432, 1446.)

To determine that a plaintiff is a "limited purpose" public figure, the court must find that there was a public controversy and that the plaintiff undertook "some *voluntary* act through which he seeks to influence the resolution of the public issues involved." (*Reader's Digest, supra,* 37 Cal.3d at p. 254.) A plaintiff's mere involvement in a controversy that happens to be newsworthy is insufficient (*ibid.*), and the court must "look for evidence of affirmative actions by which purported 'public figures' have thrust themselves into the forefront of particular public controversies" (*id.* at pp. 254–255). Finally, " 'the alleged defamation must be germane to the plaintiff's participation in the controversy.' " (*Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, 24 (*Gilbert*).)

Applying the foregoing analysis, we cannot conclude Baussan qualifies as a limited purpose public figure based on the record before us. Viewing the public controversy at issue as the disputed causes of the Lasalin massacre— that is, whether and to what extent the Haitian oligarchy and others bear responsibility for the massacre—we see nothing in the record indicating that Baussan injected himself into that controversy or that he sought to influence its resolution in the public eye. In addition to denying any involvement in the massacre, Baussan's declaration provides uncontradicted evidence that he has never held a press conference or been contacted by the media to provide comment on the information contained in defendants' article. Nor has he otherwise sought out the media for publicity purposes or to express views on this controversy. On this record, and for purposes of this particular

defamation claim, there is no basis for according public figure status to Baussan.

In contending otherwise, defendants' appellate briefing broadly frames the public controversy as "the economy of, and great disparity in wealth, in Haiti." At oral argument, defendants characterized their article as providing context to this public controversy by describing the history of how wealthy businessmen and oligarchs have worked with the Haitian government and others to politically oppress and commit human rights abuses against the majority population of Haiti. Although defendants more or less concede that Baussan did not seek the spotlight, they contend Baussan nevertheless is a public figure because he described himself in his complaint as "widely respected in the business and local community in which he engages and resides" and—by virtue of his participation on the boards of various economic and development associations—"has placed himself in a position to influence national and international policies." In support of this latter assertion, defendants cite exhibits in the record consisting of online printouts referencing Baussan's service as a board officer and/or director of various associations including the Organization of American States; the Pan American Development Foundation, the Chamber of Maritime Companies Association, the Haiti Economic Forum of the Private Sector, and other private corporations.

We decline to adopt defendants' broad characterization of the public controversy in question as the economy of Haiti and its wealth disparity, as that could render all manner of private individuals "limited purpose" public figures based solely on their participation in Haiti's economy. Moreover, even if we consider the cited online articles as evidence of Baussan's prominence in the Haitian community and involvement in that country's economic

11

organizations, such evidence, standing alone, is not enough to establish limited purpose public figure status. There must also be evidence that Baussan has affirmatively thrust himself into the forefront of the public controversy. (*Reader's Digest*, *supra*, 37 Cal.3d at pp. 254–255.) As indicated, however, there is no evidence that Baussan affirmatively sought to influence public opinion regarding either the alleged causes of the Lasalin massacre (including his alleged involvement) or the reported state of economic disparity, political oppression, and human rights abuses in Haiti.

Our conclusion finds ample support in the United States Supreme Court's decisions in *Time, Inc. v. Firestone* (1976) 424 U.S. 448, 453 (*Firestone*) and *Gertz v. Robert Welch, Inc.* (1974) 418 U.S. 323, 345 (*Gertz*). As the high court explained in *Gertz*, while in the "exceedingly rare" case one may "become a public figure through no purposeful action of his own," those classed as public figures typically have "thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." (*Gertz*, *supra*, 418 U.S. at p. 345.) Thus, while noting that the attorney plaintiff had "long been active in community and professional affairs" and was "well known in some circles," the court determined he was not a public figure because, among other things, he "plainly did not thrust himself into the vortex of this public issue [the criminal prosecution of a police officer who had killed the son of his clients], nor did he engage the public's attention in an attempt to influence its outcome." (*Id*. at pp. 351–352.)

Similarly, in *Firestone*, the court concluded that Firestone—who was prominent in Palm Beach society and sued Time, Inc. based on its allegedly defamatory report of her divorce—was not a public figure because she "did not thrust herself to the forefront of any particular public controversy in

12

order to influence the resolution of the issues involved in it." (*Firestone*, *supra*, 424 U.S. at p. 453; *Wolston v. Reader's Digest Ass'n, Inc.* (1979) 443 U.S. 157, 168 [though the failure of Wolston (an alleged Soviet agent) to appear before a grand jury was undoubtedly newsworthy, he was not a public figure because his actions were "in no way calculated to draw attention to himself in order to invite public comment or influence the public with respect to any issue"].)

Defendants' authorities do not support a different result. In *Gilbert*, *supra*, 147 Cal.App.4th 13, for instance, the Court of Appeal concluded the plastic surgeon plaintiff was "an archetypical example" of a limited purpose public figure. (*Id*. at p. 25.) But that determination was based on the defendant's evidentiary showing that the plaintiff had thrust himself into the public debate concerning the merits of plastic surgery by speaking out on the topic in his appearances on local television shows, in the numerous articles he wrote for professional journals and magazines, in testifying as an expert witness on the subject, and in advertising his services in the local media. (*Ibid*.) The record here plainly presents no parallel to the record made in *Gilbert*.

Nor are we persuaded by defendant's reliance on *Maheu v. CBS, Inc.* (1988) 201 Cal.App.3d 662. In *Maheu*, the Court of Appeal reasoned that the plaintiff was a public figure because he was "the alter ego" of Howard Hughes (whom the decision described as "beyond doubt a public figure") and "functioned as [Hughes's] personal representative to the world." (*Id*. at p. 675.) In reaching its conclusion, *Maheu* highlighted the plaintiff's stipulation in a prior federal case that both he and Hughes were public figures. (*Ibid*.) Given such circumstances, *Maheu* does not seem particularly supportive of a public figure finding in this case.

**D. Attorney Fees**

Baussan seeks an award of attorney fees in the event this court finds that the anti-SLAPP motion is "frivolous or is solely intended to cause unnecessary delay." (§ 425.16, subd. (c)(1) [allowing costs and attorney fees to prevailing plaintiffs pursuant to § 128.5].) Under section 128.5, subdivision (b)(2), a frivolous motion means one that is "totally and completely without merit or for the sole purpose of harassing an opposing party." In other words, "any reasonable attorney would agree such motion is totally devoid of merit." (*Karwasky v. Zachay* (1983) 146 Cal.App.3d 679, 681.)

Although we affirm the trial court's order denying defendant's special motion to strike, we cannot conclude the motion was totally and completely devoid of merit. Accordingly, Baussan's motion for attorney fees is denied.

DISPOSITION

The order of the trial court denying the anti-SLAPP motion is affirmed. Baussan is entitled to recover his costs on appeal.

14

                          _____

                          Fujisaki, J.

We concur:

_____

Tucher, P. J.

_____

Rodrìguez, J.

A162088

15