Filed 6/11/24  SMP Construction & Maintenance v. Holsten CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| SMP CONSTRUCTION & MAINTENANCE, INC., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> DONNA HOLSTEN, <br><br> Defendant and Appellant. | A169203 <br><br> (Contra Costa County Super. Ct. No. C2300943) |

Defendant Donna Holsten appeals an order denying in part her special motion to strike the complaint of SMP Construction & Maintenance, Inc. (SMP), her former contractor, under the anti-SLAPP (Strategic Lawsuit Against Public Participation) statute.  (Code Civ. Proc., § 425.16.)[1]  SMP sued Holsten for libel based on her negative reviews on Yelp and the Better Business Bureau (BBB) web site as well as posts she made on Facebook accusing SMP of fraud and a " 'bait and switch.' "  In granting Holsten's motion in part, the trial court held that her Yelp and BBB reviews were protected activity because they were made in connection with an issue of public interest—providing helpful information to consumers.  In denying the motion in part, the court held that Holsten's Facebook posts were not

_____

[1] All further statutory references are to the Code of Civil Procedure unless otherwise noted.

1

protected activity because their purpose was not to provide information to consumers but to obtain information for Holsten's private dispute with SMP. We agree and affirm.

## I. BACKGROUND[2]

In January 2022, Holsten hired SMP to perform construction and foundation work at her residence. During the course of this work, "several disputes arose between [SMP] and [Holsten] regarding the quality of the work and the payment amount for the contracted work."

On November 19, 2022, Holsten published a post on Facebook summarizing her dispute. The post began: "Most recent episode in the saga of my foundation construction work: 'Engineering company falsified their paperwork in collusion with the contractors.'" The post then claimed that "the foundation company [did a] bait and switch, outright lies" but did not identify SMP (or its dba Foundation Repair of California) by name. The post ended: "Now I have to decide how far I want to take this. I could nail both the engineering and foundation companies to the wall for fraud[] over this." In the comments to this post, Holsten engaged in a back-and-forth conversation with another Facebook user who was a state inspector. The two discussed the specifics of Holsten's dispute with SMP, including a fraudulent special inspection report. It is only in one of her comments in response to the inspector's query that Holsten identified "Foundation Repair of California" as the "foundation company."

On December 9, 2022, Holsten published a second post on Facebook asking for advice as to which state agencies she could report fraud committed

_____

[2] The facts and evidence in this case are taken from the pleadings and the papers submitted in the trial court in connection with the anti-SLAPP motion.

2

by a contractor and an engineering company.  Neither this second post nor the comments to that post identified SMP.

On January 9, 2023, Holsten published a third post on Facebook which began with, "Update on the Foundation Saga."  Again, SMP was not named in this post or in the comments.  In the comments to this post, Holsten again accused her unnamed contractor of "fraud and bait and switch" as well as "faking a letter from a lawyer."  She then confirmed that she "will trash them on yelp, bbb, and Google" in response to another Facebook user's comment.

On February 9, 2023, Holsten posted a lengthy review on Yelp stating that SMP "lied, did [a] bait-and-switch, committed fraud, [and] damaged my house."  Specifically, the post stated that SMP billed Holsten "for a 'special inspector' who was never here," falsified paperwork to the county inspector, and admitted to violating the building code.  The next day, Holsten posted a review on the BBB web site which similarly stated that SMP "lied, did [a] bait-and-switch, committed fraud, [and] damaged my house" and that SMP falsified paperwork and lied about the presence of a special inspector who was not there.

In April 2023, SMP sued Holsten for libel, breach of contract, and breach of the implied covenant of good faith and fair dealing.[3]  The complaint alleged that Holsten "willfully, knowingly, and maliciously made false statements" on various social media platforms with the intent to damage SMP's reputation.  Holsten responded by filing an anti-SLAPP motion.  The motion argued that her online posts constituted protected activity under

---

[3] The causes of action for breach of contract and breach of the implied covenant involved a release agreement the parties entered into after Holsten filed a claim against SMP with the California State Licensing Board.  These causes of action were dismissed as part of the order granting and denying in part Holsten's anti-SLAPP motion and are not the subject of this appeal.

section 425.16, subdivision (e)(3) because they were statements "made in a public forum about matters of public concern." According to the motion, they provided information to consumers regarding SMP's "poor workmanship" and "fraudulent and deceptive business practices." The motion further argued that the posts fell within the catchall provision of section 425.16, subdivision (e)(4) because they were made "in furtherance of the exercise of the constitutional right of free speech in connection with a public issue or public interest."

The trial court agreed that Holsten's Yelp and BBB reviews were protected activity under section 425.16, subdivision (e)(3) because they provided "information to consumers potentially considering dealing with [SMP's] business and warning consumers not to use [its] services in choosing a company to perform foundation work." Alternatively, the court held that the catchall provision of section 425.16, subdivision (e)(4) applied because Holsten's review of SMP's services was a matter of public interest and "contribute[d] to the public discourse about the business to select to perform services." Accordingly, the court granted the motion with respect to the two causes of action associated with the Yelp and BBB reviews.

The trial court, however, found that Holsten's Facebook posts were not protected activity and denied the motion as to the three causes of action associated with them. The court reasoned that the posts were distinguishable from the Yelp and BBB reviews because they were "aimed more at [Holsten] obtaining information for her private dispute with the contractor rather than providing a review of the company for consumer education, information and warning." The court concluded that the Facebook posts addressed Holsten's "private quarrels with [SMP] rather than a review of a business as an issue of public interest."

4

Holsten timely appealed.

## II. **DISCUSSION**

A.    Anti-SLAPP Law and Standard of Review

The anti-SLAPP statute provides that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution . . . in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

The court engages in a two-step process when deciding an anti-SLAPP motion.  First, the moving defendant must show that the challenged claim arises from constitutionally protected free speech or petition rights.  (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384.)  If the defendant makes that showing, then the burden shifts to the plaintiff to demonstrate a probability of prevailing on the merits of the claim.  (*Ibid*.)  In this second step, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." (*Matson v. Dvorak* (1995) 40 Cal.App.4th 539, 548.)

We review de novo a trial court's ruling denying an anti-SLAPP motion. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325.)  Like the trial court, "we consider 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' [Citation.]  However, we do not weigh credibility or compare the weight of the evidence.  [Citation.] Rather, we accept as true evidence favorable to the plaintiff, determine whether the plaintiff has made a prima facie showing of facts necessary to

5

establish its claim at trial, and evaluate the defendant's evidence only to determine whether it defeats that submitted by the plaintiff as a matter of law." (*Tichinin v. City of Morgan Hill* (2009) 177 Cal.App.4th 1049, 1061.)

> B. <u>Statements Made in Connection With an Issue of Public Interest Under the First Prong</u>

Section 425.16 identifies four types of acts covered by the anti-SLAPP statute. As relevant here, subdivision (e)(3) encompasses statements made in "a public forum in connection with an issue of public interest." (§ 425.16, subd. (e)(3).) And subdivision (e)(4), the catchall provision, encompasses "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(4).)

Both categories are "subject to the limitation that the conduct must be made in connection with an issue of public interest." (*Weinberg v. Feisel* (2003) 110 Cal.App.4th 1122, 1132.) This means that "there should be some degree of closeness between the challenged statements and the asserted public interest [citation]; the assertion of a broad and amorphous public interest is not sufficient." (*Ibid.*) It also means that "the focus of the speaker's conduct should be the public interest rather than a mere effort 'to gather ammunition for another round of [private] controversy.' " (*Id.* at pp. 1132–1133.)

Further, the anti-SLAPP statute "defines conduct in furtherance of the rights of petition and free speech on a public issue not only by its content, but also by its location, its audience, and its timing." (*FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 143 (*FilmOn*).) In other words, context matters. Indeed, our Supreme Court held in *FilmOn* that both the content and context of a statement must be analyzed under section 425.16,

subdivision (e)(4), the catchall provision. (*Id*. at p. 149.) "First, we ask what 'public issue or [] issue of public interest' the speech in question implicates—a question we answer by looking at the content of the speech. [Citation.] Second, we ask what functional relationship exists between the speech and the public conversation about some matter of public interest." (*Id*. at pp. 149–150.) Context is important to this second part of the analysis as the court must consider the "audience, speaker, and purpose" of the statement to determine whether it furthered the public conversation on the issue. (*Id*. at p. 152.) "[I]t is not enough that the statement refer to a subject of widespread public interest; the statement must in some manner itself *contribute* to the public debate." (*Wilbanks v. Wolk* (2004) 121 Cal.App.4th 883, 898 (*Wilbanks*), italics added.)

C. <u>The Facebook Posts Do Not Constitute Protected Activity Under the First Prong of the Anti-SLAPP Analysis</u>

The trial court held that Holsten's Yelp and BBB posts constituted protected activity under the first prong of the anti-SLAPP analysis but her Facebook posts did not. Holsten argues that there is no legal or factual basis to treat her Facebook posts differently than her Yelp and BBB reviews because they all contain the same content. We disagree. Although the content of Holsten's posts are similar, they are not identical. More notably, their context is different. As explained below, those differences justify the distinction made by the court.

First, Holsten's three Facebook posts detailing "the saga of [Holsten's] foundation construction work" were *not* posted on SMP's Facebook page and did *not* identify SMP by name. Instead, the posts only referenced "the foundation company" or "Contractor." Holsten only identified Foundation Repair of California (SMP's dba) briefly in in one comment during a

7

back-and-forth conversation she had with another Facebook user in the comments to her first Facebook post. Holsten did not thereafter identify SMP or its dba in any of her other Facebook posts or comments.

Therefore, unlike Holsten's Yelp and BBB reviews—which appeared directly below SMP's profile and provided helpful information to consumers about SMP's services and business practices[4]—her Facebook posts did no such thing. Indeed, a consumer perusing Holsten's three Facebook posts would have to read through the many comments to those posts to find the one comment that identified SMP as the problematic foundation company. As a result, both the content and context of Holsten's Facebook posts support the trial court's conclusion that those posts addressed her "private quarrels with [SMP] rather than a review of a business as an issue of public interest."

This conclusion is bolstered by the last sentence of Holsten's first Facebook post in which she wrote, "Now I have to decide how far I want to take this. I could nail both the engineering and foundation companies to the wall for fraud[] over this." Rather than warn consumers about SMP, this statement appears to be an invitation for advice or input about her private dispute with SMP. And Holsten did, in fact, receive plenty of advice and input in the comments to this post.

The cases cited by Holsten are distinguishable. In *Wilbanks, supra*, 121 Cal.App.4th 883, for example, the defendant created a viatical settlements " 'consumer watchdog' " web site and posted critical statements

---

[4] On our own motion, we take judicial notice of Foundation Repair of California's Yelp and BBB business profile web sites pursuant to Evidence Code section 452, subdivision (h). (<https://www.yelp.com/biz/foundation-repair-of-ca-livermore?start=70> [as of June 11, 2024] and <https://www.bbb.org/us/ca/livermore/profile/foundation-contractors/foundation-repair-of-ca-1116-437270> [as of June 11, 2024].)

about the plaintiff (a viatical settlements broker), including that the plaintiff was unethical and was under investigation by the Department of Insurance. (*Id*. at pp. 889–890.) This court concluded that those statements were protected activity because they were "provided to aid consumers choosing among brokers" and "were directly connected to an issue of public concern." (*Id*. at p. 900.) Unlike Holsten in her Facebook posts, the defendant in *Wilbanks* made his posts on a web site dedicated to advising consumers, identified the plaintiff *by name* to educate and warn consumers about doing business with this broker, and did not explicitly or implicitly solicit advice on a specific dispute with the plaintiff. (*Id*. at p. 889.)

Similarly, in *Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, the defendant created a web site detailing her "nightmare" plastic surgery experience. (*Id*. at p. 19.) The site *identified* the plaintiff as her plastic surgeon and listed several malpractice suits that were filed or pending against the plaintiff at the time. (*Id*. at pp. 19–20.) In finding that the web site concerned a matter of public interest, the court of appeal held that information regarding the defendant's experiences with a prominent plastic surgeon like the plaintiff (*id*. at p. 23) and general tips on choosing a plastic surgeon contributed to the "debate over the pros and cons of undergoing cosmetic surgery" (*id*. at p. 24). By contrast, Holsten's Facebook posts never identified SMP and appeared to solicit advice or input on her private dispute with SMP.

Finally, in *Chaker v. Mateo* (2012) 209 Cal.App.4th 1138, another case Holsten relies on for support, the court of appeal found that derogatory statements posted to a social networking site about the plaintiff's forensics business concerned a matter of public interest. (*Id*. at pp. 1146–1147.) The court, however, highlighted that the plaintiff "became the subject of statements on the [social media] Web site only after he posted a profile on the

Web site and it generated responses from other members of the community, including apparently statements from [the defendant]." (*Id*. at p. 1146.) The court therefore concluded that "Chaker himself made his character a matter of public interest." (*Id*. at p. 1147.) By contrast, Holsten made the statements on her own Facebook page, and not on a page created by SMP. And there was no way to determine that the Facebook posts concerned SMP unless you went through the comments to one of the posts.

We agree with Holsten that the facts here are different from those in *Woodhill Ventures, LLC v. Yang* (2021) 68 Cal.App.5th 624 (*Yang*), a case the trial court relied on in finding the Facebook posts not to be protected activity. But those factual differences do not help Holsten here.

In *Yang*, the plaintiff ordered a cake from the defendant (a bakery) for his seven-year-old son's mad science themed birthday party but was unhappy with how realistic the pills looked on the cake. (*Yang, supra,* 68 Cal.App.5th at pp. 626–627.) The plaintiff, a "[s]elf-proclaimed celebrity jeweler," complained about the defendant on social media to his 1.5 million followers. (*Id*. at pp. 626–627.) The defendant sued the plaintiff after receiving negative reviews and death threats from the plaintiff's followers, and the plaintiff responded with an anti-SLAPP motion. (*Id*. at pp. 624, 627.) In concluding that the plaintiff's social media posts were not protected activity, the court of appeal held that although children confusing medication for candy might be an issue of public interest, the plaintiff's "statements did not seek a public discussion of anything. They aimed to whip up a crowd for vengeful retribution." (*Id*. at pp. 632–633.)

Although Holsten's Facebook posts could not have been "aimed to whip up a crowd for vengeful retribution" because they did not even name SMP (*Yang, supra,* 68 Cal.App.5th at pp. 632–633), they, like the plaintiff's posts

10

in *Yang*, did not contribute to the public debate on a matter of public interest. For example, they did not warn consumers of SMP's fraudulent business practices or advise consumers about choosing a contractor. Instead, they only discussed the details of Holsten's own personal dispute with an unnamed foundation company.

For similar reasons, Holsten's Facebook posts do not qualify as protected activity under the catchall provision of section 425.16, subdivision (e)(4). First, as discussed above and contrary to Holsten's argument, her posts do not provide helpful consumer information.

Second, even if the fraudulent business practices of contractors is an issue of public interest, we must also consider "what functional relationship exists between the speech and the public conversation" on the issue and whether the speech *furthered* that conversation. (*FilmOn, supra*, 7 Cal.5th at pp. 149–150.) "[I]t is not enough that the statement refer to a subject of widespread public interest." (*Wilbanks, supra,* 121 Cal.App.4th at p. 898.) Here, Holsten's Facebook posts did not further any public conversation about the fraudulent business practices of contractors. For example, they did not warn the public about *SMP*'s practices or any company's particular practices. Instead, they only detailed her private dispute with an unnamed contractor. To the extent Holsten provided more details about that dispute in comments to her posts, she did so in the context of receiving suggestions or input on the dispute. Indeed, evidence that Holsten's posts were not intended to contribute to the public conversation about an issue of public interest is apparent from one of her comments to her second Facebook post in which she wrote, "I will trash them on yelp, bbb, and Google" and "when this is over, I'm going to ruin them." Thus, the trial court correctly concluded that Holsten

posted on Facebook in order to vent about a private dispute and to discuss that dispute with her social media friends.

Finally, we reject Holsten's argument that her Facebook posts were "made in connection with an issue of public interest because they relate to an industry that is subject to government involvement and oversight on an ongoing basis." In *Industrial Waste & Debris Box Service, Inc. v. Murphy* (2016) 4 Cal.App.5th 1135, this court did hold that the "degree of government involvement and oversight on an ongoing basis demonstrates widespread public interest in the subjects of solid waste recycling, diversion and disposal." (*Id.* at p. 1149.) But this holding does not mean that *any* statement related to a government-regulated industry is protected by the anti-SLAPP statute. Rather, it merely established that government involvement may, but does not necessarily, support a finding that an issue is of public interest. To the extent there is government involvement in Holsten's private dispute with SMP, it is minimal and certainly does not support a finding that her posts concern an issue of public interest.

In any case, a statement must not only refer to a subject of public interest; it must also *contribute* to the public debate in order to qualify as protected activity under section 425.16, subdivision (e)(4). (*FilmOn, supra,* 7 Cal.5th at p. 150.) Holsten has not met this burden here.

Because we find that the Facebook posts are not protected activity under the first prong of the anti-SLAPP analysis, we need not move onto the second prong.

## III.  DISPOSITION

The judgment is affirmed.

12

CHOU, J.

We concur.

JACKSON, P. J.
BURNS, J.

*SMP Construction & Maintenance, Inc. v. Holsten* / A169203